**Howard FINK and Lucia Marett, Plaintiffs,**

v.

**NEW YORK CITY DEPARTMENT OF PERSONNEL and New York City Human Resources Administration, Department of Social Services, Defendants.**

**No. 92 Civ. 4531 (LAP).**

United States District Court, S.D. New York.

June 15, 1994.

Jeffrey L. Kreisberg, Kreisberg & Maitland, P.C., New York City, for plaintiffs.

Chlarens Orsland, Offices of Paul A. Crotty, Corp. Counsel of City of New York, New York City, for defendants.

## OPINION & ORDER

PRESKA, District Judge:

Plaintiffs, two visually impaired employees of the New York City Department of Social Services, bring this action alleging that defendants, New York City Department of Personnel and New York City Human Resources Administration, Department of Social Services, violated Section 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794(a), by failing to reasonably accommodate plaintiffs' disabilities during the administration of a civil service promotional examination. Presently before the Court is the defendants' motion for summary judgment.

### Background

Plaintiffs are two individuals holding the position of Supervisor I in the New York City Human Resources Administration. Both are blind. On November 18, 1989, they took Civil Service Examination No. 8508 for promotion to the position of Supervisor II.

They failed the examination, each falling short of the minimum passing score by two questions.

The examination was administered by the New York City Department of Personnel, Examining Services Division ("DOP"). Several months prior to the examination, plaintiffs allege, they contacted DOP to request that the examination be provided to them in braille. Plaintiffs claim that they were told that the examination could not be given in braille but that they could make a written request to be provided a taped version of the examination and a person to act as a "reader" and assist them in operating the tape machine and registering their answers. Both did so, and their requests were granted. At the administration of the examination, each was given a professionally prepared tape recording of the examination; a tape recorder; a reader to record responses on an answer sheet and to assist in operating the tape recorders; and double the amount of time normally allowed to complete the examination. Plaintiffs took their tests in separate, adjoining rooms, with only their readers present.

Despite these accommodations, plaintiffs assert that they were not able to perform to the best of their abilities on the examination. Their concentration was impaired, they claim, by their readers, who walked in and out of the testing rooms and talked to each other about various personal matters. Additionally, plaintiffs assert, questions 74 and 75 of the examination were improperly transcribed to the audio tape, making them impossible for plaintiffs to answer correctly. Plaintiff Fink alleges that his reader refused to read him question 75 from the written version of the examination so as to clarify the incorrect audio transcription. Both plaintiffs allege that their readers incorrectly recorded some of their answers.

More than two and one-half years after the examination and some eight months after receiving notice that they had failed, plaintiffs filed the instant action. The complaint asserts that because of the problems noted immediately above and because of defendants' refusal to provide the examination in braille, defendants failed to reasonably accommodate plaintiffs' disability in the administration of the examination and thereby discriminated against them on the basis of their disability and excluded them from employment in violation of 29 U.S.C. § 794(a). De-

fendants deny that this is the case and have moved for summary judgment on the grounds that their efforts towards plaintiffs were, as a matter of law, sufficient to satisfy the statute. Plaintiffs contend that factual issues exist concerning the success and reasonableness of defendants' efforts which make summary judgment impossible.

## Discussion

### A. Standard for Summary Judgment

Pursuant to Fed.R.Civ.R. 56(c), a trial judge may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* In determining whether any genuine issue of material fact is presented, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Walther v. Bank of New York,* 772 F.Supp. 754 (S.D.N.Y.1991). However, once the moving party has met its initial burden of demonstrating the absence of a material issue of fact "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Hope alone will not raise a triable issue." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993), *quoting, Bachrach v. Farbenfabriken Bayer AG,* 36 N.Y.2d 696, 366 N.Y.S.2d 412, 413, 325 N.E.2d 872, 873 (1975).

### B. The Vocational Rehabilitation Act

Section 504 of the Vocational Rehabilitation Act provides in pertinent part that:

> No otherwise qualified individual with handicaps in the United States ... shall solely by reason of her or his handicap, be excluded from the participation in, or denied the benefits of, or be subjected to discrimination under any program or activity ... conducted by an Executive agency.

29 U.S.C. § 794(a). To establish a *prima facia* case under the Act, plaintiffs have the burden to show that (1) they are handicapped persons under the Act; (2) they are "otherwise qualified" for the position they seek; (3) they were excluded from the position solely because of their handicap; and (4) the program sponsoring the position received federal funding. *Guice–Mills v. Derwinski,* 967 F.2d 794, 797 (2d Cir.1992). Only the second of these elements is disputed in this case.

"Otherwise qualified" has been defined by the Court of Appeals to include individuals whose disabilities have no effect on their ability to perform their job functions, as well as those whose disabilities do affect their performance but who are able to perform effectively with "reasonable accommodation" by the employer. A plaintiff falling within the latter category has the initial burden to establish that some form of reasonable accommodation is possible. Upon such a showing, the burden then shifts to the defendant to show that no reasonable accommodation is possible or that reasonable accommodations were in fact provided. *See Gilbert v. Frank,* 949 F.2d 637, 641–642 (2d Cir.1991).

In a sense, plaintiffs here cannot demonstrate that they are otherwise qualified for the position of Supervisor II because they admittedly failed the civil service examination required for promotion to that position. However, because plaintiffs allege that their failure of that examination was due to disability-based discrimination, the inquiry may not stop there. Rather, the Court must scrutinize the administration of the examination itself. The parties agree that Section 504 imposed an obligation on defendants to make such reasonable accommodations of plaintiffs' disability as would allow plaintiffs to compete, to the maximum extent reasonably possible, on a level playing field with other test-takers. *See Gilbert, supra.* The case turns, therefore, on whether the accommodations indisputably provided by defendants—including provision of the examination on tape, a tape recorder, a reader, and extra time to

complete the examination—were sufficient to meet the statutory mandate.

Plaintiffs offer two reasons why they were not. First, they maintain, defendants have failed to establish that it would have been unduly burdensome to arrange for plaintiffs to take the examination in braille, their preferred accommodation. Second, plaintiffs argue, even if the defendants' planned accommodations would have been sufficient in the abstract, the problems occurring at the actual administration of the test—i.e., the readers' distracting behavior and the problems in the audio transcription of the examination—rendered the efforts legally unsatisfactory. At the very least, plaintiffs claim, there are issues of fact relating to each of these arguments that prevent the Court from granting defendants' motion for summary judgment. I find, however, that plaintiffs' arguments are incorrect as a matter of law and that the disputed factual issues relating to those arguments are, consequently, not material.

■ Plaintiffs' first argument, that defendants have not established the impracticability of offering the examination in braille, appears to stem from a misunderstanding of the statutory requirements. In any event, it is a legal irrelevancy. The statute requires employers to make such reasonable accommodations as will allow disabled individuals to compete fairly with their non-disabled colleagues. *See Pandazides v. Virginia Bd. of Educ.*, 804 F.Supp. 794, 801 (E.D.Va.1992) ("The Rehabilitation Act does not guarantee the handicapped equal results; it assures evenhanded treatment . . ."). There is no provision requiring the employer to take account of the disabled individual's preferences in choosing the means of accommodation. So long as the means chosen allow the individual to fairly compete, the employer satisfies his legal obligation. *See Wynne v. Tufts Univ. School of Medicine*, No. 99–1105–Z, 1992 WL 46077, at *1 (D. Mass. Mar. 2, 1992) ("That defendant could have provided a different set of reasonable accommodations or more accommodations does not establish that the accommodations provided were unreasonable or that additional accommodations were necessary."). *See also Carter v. Bennett*, 651

F.Supp. 1299, 1301 (D.D.C.1987), *aff'd,* 840 F.2d 63 (D.C.Cir.1988) ("The government is not obligated under [the Rehabilitation Act] to provide plaintiff with every accommodation he may request, but only with reasonable accommodation as is necessary to enable him to perform his essential functions."). In this case, therefore, the question of whether defendants could have offered the examination in braille without undue hardship and expense is not the proper question with which to begin. Rather, I must first determine whether the efforts made by defendants were reasonable accommodations. Only if I find that they were not is there need to examine whether a braille examination, or other alternative accommodations, were feasible.

■ As a matter of law, however, I find that the accommodations offered by defendants were sufficient to satisfy their statutory obligation. By providing a taped version of the exam, a tape player, a reader, and extra time, defendants afforded sufficient aid so that plaintiffs' blindness should not have been a disadvantage to them in taking the examination. If all had gone as planned, defendants efforts would have enabled plaintiffs to know and understand the test questions and to register answers to those questions without undue haste. *See Carter, supra* (holding provision of a reader, *inter alia,* to be a reasonable accommodation of a blind employee); 45 C.F.R. § 84.12(b) (including provision of a reader among a list of examples of reasonable accommodation). That is all anyone taking a test is entitled to ask. Consequently, I find that defendants' efforts toward accommodation, as planned, were reasonable and sufficient to satisfy 29 U.S.C. § 794(a).

■ Of course, plaintiffs' second argument is that things did not go as planned and that problems with the actual administration of their examinations rendered defendants' efforts at accommodation unsatisfactory. According to plaintiffs, their readers were more of a hindrance than a help, and the taped version of the exam contained incor-

rect versions of two questions.[1] Because plaintiffs have submitted enough evidence to at least raise issues of fact in these areas, for the purposes of this motion, I take plaintiffs' allegations as true. Doing so, however, does not change my conclusion that defendants' efforts at accommodation were adequate.

Plaintiffs do not dispute that the readers employed by defendants were instructed to talk only when necessary during the examination and to avoid disrupting the participants in any way. *See* Ehlers 7/9/93 Aff. at ¶ 3. Nor do plaintiffs claim that defendants used anything less than their best efforts in attempting to prepare an accurate audio tape version of the examination. What defendants have alleged (and what I assume to have happened) are unauthorized, unintentional actions and errors which resulted in unfair test-taking conditions. This, however, is not what the Vocational Rehabilitation Act was designed to remedy.

As noted above, the Act was intended to prevent employment discrimination on the basis of disability. That evil is not presented by random occurrences which, by chance, adversely affect employees (or, in this case, employment candidates) who are disabled. The sorts of problems forming the basis of plaintiffs' complaint could just as easily have struck their non-disabled colleagues. A noisy reader could have been a disruptive timekeeper; an unclear audio tape could have been a typographical error. The relevant inquiry, for purposes of § 794(a), is whether the disabled test-takers were in any way placed at a disadvantage in the means by which such unforeseen circumstances were remedied.

Here, that was not the case. Defendants having made plans and promulgated policies to adequately accommodate plaintiffs' blindness in the administration of the examination, plaintiffs were put in the same position as all other applicants: They were protected by testing procedures designed to guarantee a fair examination, the violation of which was grounds under New York State law for a challenge pursuant to C.P.L.R. Article 78 to the administration of the test. *See e.g., Matter of Mitchell v. Poston,* 41 A.D.2d 886, 342 N.Y.S.2d 482, 483 (4th Dep't 1973) (Civil Service Commissioner is vested with discretion to determine the competitiveness of examinations and to correct errors in a reasonable manner). If, for example, plaintiffs' readers were talking loudly about personal matters, this would have violated the testing policy that readers must be unobtrusive, and plaintiffs would have been able to demand appropriate relief in an Article 78 proceeding. Assuming plaintiffs' allegations to be true, therefore, they were victims of unfortunate improprieties committed by personnel of defendants, but not of disability-based discrimination. Their problems arose from the test administrators' failure to follow concededly adequate instructions, not from any inherent unfairness arising out of their disability. To the extent there were problems in the administration of plaintiffs' examinations, they had the same rights as all other test-takers to correct them.

Because I find as a matter of law that defendants reasonably accommodated plaintiffs' disability in the administration of Civil Service Examination No. 8508, defendants' motion for summary judgment must be granted.

### Conclusion

Defendants' motion for summary judgment is GRANTED.

---

1. One of the two questions to which plaintiffs refer defendants acknowledge was incorrect on the taped examination. Prior to the institution of this action, plaintiffs were given credit for that question, and their scores were correspondingly adjusted upward.