**David NELSON, Plaintiff,**

**v.**

**Jack RYAN, Assistant Commissioner, New York State Department of Social Services, Commission for the Blind and Visually Handicapped,**

**Mary Jo Bane, Commissioner, New York State Department of Social Services, and**

**Josephine L. Gambino, Commissioner, New York State Department of Civil Service, Defendants.**

**No. 91–CV–619S.**

United States District Court, W.D. New York.

July 29, 1994.

Neighborhood Legal Services, Inc. (James R. Sheldon, Jr., of counsel), Buffalo, NY, for plaintiff.

G. Oliver Koppell, N.Y. State Atty. Gen. (Andrew Lipkind, Asst. Atty. Gen., of counsel), Buffalo, NY, for defendants.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

The parties to this action executed a consent to proceed before the undersigned which was filed on July 29, 1992. The matter is presently before the court on Plaintiff's motion for summary judgment, filed December 16, 1992.

## BACKGROUND

Plaintiff filed this action on September 20, 1991 asserting claims under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and a claim under 42 U.S.C. § 1983 for violations of his right to equal protection and due process. Plaintiff also filed a motion for class certification on the same date, but withdrew the motion on May 27, 1992, pursuant to a Stipulation and Order.

Following a period of discovery, Plaintiff filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, on December 16, 1992. In the summary judgment motion, Plaintiff requested an order declaring that Defendants' actions, policies, and procedures violated Plaintiff's statutory and constitutional rights; permanently enjoining Defendants from requiring that Plaintiff utilize personal, sick, vacation, or unpaid leave to obtain a new seeing eye guide dog, so long as Plaintiff's duties require that he travel outside the office; permanently enjoining Defendants from requiring Plaintiff to utilize such leave to obtain a new guide dog without first providing him notice and an opportunity for a hearing; and, directing Defendants to restore the sick, vacation, and personal leave credits used by Plaintiff during September and October, 1990 to obtain a new guide dog.

Defendants filed their response on February 16, 1993. Defendants represented that there were no material facts in dispute. Further, although not filing a formal cross-motion for summary judgment, Defendants asserted that they were entitled to judgment as a matter of law. Plaintiffs thereafter filed a reply memorandum on March 15, 1993.

Oral argument on the matter was held on April 1, 1993.

For the reasons as set forth below, Plaintiff's motion for summary judgment is DENIED. Further, Defendant's cross-motion for summary judgment is GRANTED.[1]

## FACTS

Plaintiff, David Nelson, has been legally blind since undergoing a surgical procedure at the age of 9. (T. 5).[2] From that time until Plaintiff became 18 years of age, Plaintiff did not use any assistance devices to give him greater mobility, (T. 6–8), however, during the summer of 1962, Plaintiff attended a rehabilitation center in New York City to obtain training using a cane, so that he would be able to attend college at the University of Rochester. (T. 7–11). From 1962 until 1978, Plaintiff utilized the cane for mobility.

In February, 1978, Plaintiff obtained his first guide dog. (T. 15). Since that time, Plaintiff has used the guide dog for all "meaningful mobility," (T. 15), using a cane only in situations where a guide dog is not appropriate, such as at a movie theater or at a baseball game. (T. 16–18). Plaintiff does not use the dog in his residence, (T. 19), but uses the dog mainly as a mobility device outside of the house, for instance, in travelling to work on public transportation, or in attending outside activities. (T. 21–22).

In February, 1981, Plaintiff became employed by the New York State Department of Social Services, Commission for the Blind and Visually Handicapped (CBVH) as a Rehabilitation Teacher/Instructor of the Blind. *See* Plaintiff's Notice of Motion, Affidavit of David Nelson, dated December 15, 1992, at p. 1, ¶ 1; (T. 55–56). Plaintiff's job description requires him to provide individual instruction to blind persons in daily life activities, including basic homemaking, cooking skills, financial management, the use of Braille, and other necessary skills. *See* Affidavit of David Nelson, at p. 2, ¶ 4; (T. 39). To perform his job, Plaintiff travels to his clients' homes mainly through the use of public transportation. *See* Affidavit of David Nelson, at p. 2, ¶ 5. Plaintiff uses the guide dog to travel to the homes of his clients because it is quicker and more efficient. (T. 29). Plaintiff visits clients four to five days a week for generally half a day, with the remainder of the day spent in his office. (T. 43). The CBVH, as a

---

1. Although, as noted, a formal cross-motion for summary judgment was not filed, the court finds that Plaintiff was clearly on notice that Defendants were requesting judgment as a matter of law based on the undisputed facts in this case.

2. T. references are to the page number of the transcript of the deposition of David L. Nelson, dated May 22, 1992.

reasonable accommodation, assigns Plaintiff to clients who, generally speaking, are all located along the route of public transportation so that Plaintiff can visit them independently. (T. 47, K. 8).[3] The CBVH also provides that if public transportation ends a reasonable distance (more than a few blocks) from a client's home, Plaintiff can use a taxi to travel the remaining distance and be reimbursed for the fare. (K. 9).

In October, 1989, Plaintiff's first guide dog, Boscoe, was put to sleep. *See* Affidavit of David Nelson, at p. 2, ¶ 6. From that time, until January, 1990 when Plaintiff obtained a new dog, Plaintiff took taxis to his clients' homes, and used a cane. (T. 51–52). Plaintiff did not seek reimbursement for the taxi fares, nor did he inquire as to whether it would have been available. (T. 49–50).

From January 2 through January 17, 1990, Plaintiff attended training for his new guide dog, Lorna, at the Seeing Eye, Inc. in New Jersey. *See* Affidavit of David Nelson, at p. 2, ¶ 6. Plaintiff utilized sixteen days of vacation and floating holidays for that purpose, without requesting any other reasonable accommodation. *See* Affidavit of David Nelson, at p. 2, ¶ 6. After Plaintiff returned with Lorna, however, Plaintiff began having difficulty with the dog, such as Lorna walking too fast, pulling too hard, and being afraid of the buses which Plaintiff used to travel to his clients' homes. (T. 59–60). Plaintiff attempted to work with Lorna until August, 1990, at which time Plaintiff began leaving Lorna at home, and utilizing a cane. (T. 61). After two weeks of leaving Lorna at home, Plaintiff returned the dog to the Seeing Eye, Inc. (T. 61). Plaintiff then again commenced using taxicabs and his cane to travel to his clients' homes. (T. 61). According to Plaintiff, it was much more difficult to travel with a cane than with a guide dog, as the dog allowed him to "travel to and from . . . various bus stops to clients' homes and back again, quickly, efficiently, without fumbling, without bumping into obstacles with the cane or subsequently ricocheting or bouncing off them, which [was] disorienting." (T. 29).

Further, Plaintiff claimed that he moved more slowly when using a cane. (T. 30).

Within a week of returning Lorna to Seeing Eye, Inc., Seeing Eye, Inc. notified Plaintiff that another dog, Nolte, would be available in October, 1990. (T. 62). Plaintiff informed Fred Keller, the district manager of the Buffalo office of the CBVH and Plaintiff's direct supervisor, that he would be travelling to New Jersey to be trained with Nolte. (T. 64). Plaintiff asked Keller for fourteen days of paid leave without being charged against sick, annual, or personal leave credits as a reasonable accommodation to go to New Jersey for the training. (T. 65).

According to Keller, a reasonable accommodation request is generally made pursuant to an informal process, wherein a verbal request is made, with a follow-up written request if a state expenditure is required. (K. 24). If a question arises as to the appropriateness of the request, Keller obtains approval or denial from his superiors. (K. 26–27).

In this case, upon Plaintiff's request for paid leave as a reasonable accommodation, Keller first spoke to Richard Ratajak, the supervisor of the policy and procedures unit of the CBVH. (K. 30). After investigating the request, Ratajak contacted Keller and stated that the procedure to be used under the Civil Service law was that an individual could charge up to twenty-six days of sick time for guide dog training, or could use personal leave or annual leave. (K. 31–32). No policy existed where an individual could obtain paid leave without charging the leave to allocated sick, annual, or personal leave credits. (K. 33). Keller then informed Plaintiff that he could use his sick leave or annual leave, but that he would not be allowed administrative leave time to be trained with the new dog. (K. 34, T. 67). When Plaintiff stated that he did not have sufficient sick time, Keller offered to allow Plaintiff to "borrow" against his future accrued leave credits, contingent upon obtaining approval. (T. 68).

---

3. K. references are to the page number of the transcript of the deposition of Fred B. Keller,

dated April 21, 1992.

Plaintiff travelled to New Jersey prior to obtaining approval on September 29, 1990. Sometime after his return on October 8, 1990, Plaintiff was informed by Nancy Rosenberg, a personnel administrator in Albany, New York, that the advance on sick leave credits was approved. (T. 69–72). Plaintiff accepted this advance, however, he protested that he should have been granted a paid leave as a reasonable accommodation. (T. 70). Keller stated that the denial of Plaintiff's request for paid leave as a reasonable accommodation was based on the Civil Service Commission's policy that advance sick leave be granted for use in this type of situation, and further stated that allowing the use of advance sick leave was in itself a reasonable accommodation not given to other non-disabled employees. (T. 74).

Jack Ryan, the Director of the CBVH, who is also legally blind, stated that, while he assumed that Plaintiff used his guide dog for work purposes, he expected that Plaintiff did not encounter any more difficulty in terms of the obstacles that Plaintiff had to overcome using a cane rather than the dog, and that the advantage of the dog was only that travelling is quicker and a "little more" efficient. (R. 18).[4] Keller also acknowledged that Plaintiff used his guide dog while he performed his work functions, although he noted that, during the time that Plaintiff did not have a guide dog available, he continued to satisfactorily perform his duties. (K. 21).

Ryan further stated that he did not make the decision to disallow Plaintiff's request for paid leave to attend guide dog training, but that he was aware that the determination not to grant paid leave was in accordance with the guidelines of the Department of Social Services and the Department of Civil Service. (R. 25). However, Ryan acknowledged that other employees who were provided with equipment such as computers with specialized software for blind persons were not required to use sick leave or vacation leave credits when being trained with the equipment or evaluated for the equipment. (R. 43, 46–47).

4. R. references are to the page number of the transcript of the deposition of Jack Ryan, dated

## DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209·(2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* 477 U.S. at 331, 106 S.Ct. at 2556–57.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Rattner, supra,* at 209.

In this case, all parties agree that there are no material facts in dispute. Therefore, both Plaintiff and Defendants contend that they are entitled to judgment as a matter of law.

■ Plaintiff claims that Defendants' actions in denying him paid leave without charging sick, annual, or personal leave accruals for the purpose of attending guide dog training was a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Defendants contend that the policy of the CBVH in allowing Plaintiff to use his sick, annual, or personal leave credits for purposes of attending guide dog training, and provid-

April 21, 1992.

ing that, in the case where sufficient leave accruals are not available, allowing Plaintiff to receive advance credit for leave accruals, was a reasonable accommodation to Plaintiff.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) provides that:

> ... no otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

"Otherwise qualified" has been defined to include "individuals whose disabilities have no effect on their ability to perform their job functions, as well as those whose disabilities do affect their performance but who are able to perform effectively with "reasonable accommodation" by the employer. *Fink v. New York City Department of Personnel*, 855 F.Supp. 68, 71–72 (S.D.N.Y.1994). The Rehabilitation Act of 1973 was intended to deter discrimination against handicapped individuals, and to expand their employment opportunities and integration into society. *Gilbert v. Frank*, 949 F.2d 637, 639–640 (2d Cir.1991).

To establish a *prima facie* violation of Section 504, a plaintiff must prove that: (1) he or she is a "handicapped person" as defined in the Rehabilitation Act, (2) he or she is "otherwise qualified" to participate in the offered activity or to enjoy its benefits, (3) he or she is being excluded from such participation or enjoyment solely by reason of his or her handicap, and (4) the program denying the plaintiff participation receives federal financial assistance. *Rothschild v. Grottenthaler*, 907 F.2d 286, 289–290 (2d Cir.1990). Once a *prima facie* violation of section 504 has been established, "the defendant must present evidence to rebut the inference of illegality." *New York State Association for Retarded Children v. Carey*, 612 F.2d 644, 649 (2d Cir.1979).

In this case, there is no question that Plaintiff is handicapped and that he is "otherwise qualified" for the position he holds with CBVH. Further, it is undisputed that both the New York State Department of Social Services ("DSS"), and the CBVH are recipients of federal funding. Although the New York State Department of Civil Service does not receive federal funding, its policies are controlling over the employees of the DSS and the CBVH, and, therefore, this defendant is properly joined in this action. The dispute in this case is based on the third element of a claim under Section 504, *i.e.*, whether Plaintiff is being improperly denied a benefit based on his handicap, in this case, sick, annual, and personal leave credits used to accommodate retraining of his seeing-eye dog.

In the case of employment, a plaintiff raising a claim that he or she was otherwise qualified for a position has the burden of establishing that some form of reasonable accommodation was possible to allow him to keep that position. Upon such a showing, the burden shifts to the defendant to show that no reasonable accommodation was possible, or that reasonable accommodations were, in fact, provided. *Gilbert, supra*, at 641–42. A "reasonable accommodation" may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, but does not require the elimination of any of the job's essential functions. *Gilbert, supra*, at 642. A determination with respect to a reasonable accommodation is "highly fact-specific and requires the court to engage in an individualized inquiry to ensure that the employer's justifications 'reflect a well-informed judgment grounded in a careful and open-minded weighing of the risks and alternatives ...'" *Hall v. United States Postal Service*, 857 F.2d 1073, 1080 (6th Cir.1988) (citing *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). An accommodation is "reasonable" when "any employment barrier is surmountable without substantial modification in the requirements of the position or undue administrative or financial burden." *Guice–Mills v. Derwinski*, 772 F.Supp. 188, 198 (S.D.N.Y. 1991). The ultimate inquiry is not whether a plaintiff's actual request for an accommodation is allowed, but whether the accommodation offered to the plaintiff was, in fact, reasonable. *Fink, supra*, at 72 ("[t]here is no provision requiring the employer to take ac-

count of the disabled individual's preferences in choosing the means of accommodation ... [s]o long as the means chosen allow the individual to compete, the employer satisfies his legal obligation").

In this case, relevant New York State regulations provide as follows:

In addition to personal illness ..., the following types of absence, when approved ... may be charged against accumulated sick credits: ... absences of an employee certified as visually handicapped by the ... Commission for the Blind and Visually Handicapped for the purpose of obtaining a guide dog and required training related thereto; provided, however that charge for such absences shall not exceed a maximum of 26 days in any one calendar year. New York Code of Rules and Regulations § 21.-3(f).

The appointing authority may, in its discretion, upon written request from an employee certified as visually handicapped by the ... Commission for the Blind and Visually Handicapped, advance up to 26 days of sick leave to such employee who is absent for the purpose of obtaining a guide dog and exhausted accumulated leave credits, provided the cumulative total of sick leave credits charged and/or advanced for this purpose does not exceed 26 days in any one calendar year. New York Code of Rules and Regulations § 21.4(b).

As provided in these regulations, Plaintiff, at the time he travelled to Seeing Eye, Inc. for fourteen days to receive training with a new guide dog, was advanced sufficient accumulated leave credits to enable him to be paid during the time in which he was absent for work. However, Plaintiff argues that, as a reasonable accommodation, Plaintiff's leave credits should not have been charged during his absence, and that the State's regulations do not constitute a reasonable accommodation for his handicap, as sighted persons do not similarly have to use their leave credits. The court does not agree.

Although the court's research did not reveal any cases directly on point, the legislative history of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, provides some guidance. The ADA expand-

ed the coverage of Section 504 of the Rehabilitative Act of 1973 by providing relief from discrimination by private employers. However, the ADA "borrows much of its substantive framework from § 504 of the Rehabilitative Act." Jana Howard Carey, *Americans with Disabilities Act,* Practising Law Institute (1992). Further, Equal Employment Opportunity Commission regulations, as directed by the legislative history of the ADA, expressly acknowledge that they are modeled on the regulations issued pursuant to § 504 of the Rehabilitative Act of 1973. 34 C.F.R. § 104.

In the legislative history to the ADA, Congress stated that items such as hearing aids, glasses, and seeing eye dogs are generally considered personal items that an employer is not required to provide. S.Rep. Nos. 101–116, 101st Cong., Session 32–33 (1989). In discussing a reasonable accommodation in relation to a guide dog, federal regulations state that a reasonable accommodation may mean allowing disabled persons to use their own aids or services which the employer need not provide. 29 C.F.R. § 1630. For example, an employer is not required to provide a guide dog for a blind employee, but the employer would need to allow the employee to use the guide dog at work. 29 C.F.R. § 1630.2(*o* ).

In this case, there is no question that Defendants allow Plaintiff to use his guide dog at work. Defendants also permitted Plaintiff to use accrued leave credits and, if needed, advance leave credits, to accommodate his need to train a new guide dog. However, Plaintiff seeks to go beyond this accommodation to require Defendants to provide him with uncharged paid leave while he receives guide dog training. There is no support in the caselaw for this proposition.

In *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 879 (9th Cir.1989), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990), the court held that the defendant's failure to offer the plaintiff a leave of absence to treat a migraine condition was a violation of Section 504. The court found that the defendant should have allowed plaintiff to use his accrued sick or personal time in order to obtain

treatment. In *Rodgers v. Lehman,* 869 F.2d 253, 259 (4th Cir.1989), the court held that an alcoholic employee should have been given the opportunity to participate in a rehabilitation program using accrued or unpaid leave, and that the defendant's refusal to allow plaintiff to use such leave was a violation of Section 504. In *Prewitt v. United States Postal Service,* 662 F.2d 292, 309 (5th Cir. 1981), the court stated that as long as there were "plausible" reasons to believe that the handicap could have been accommodated by a leave of absence, the employer was responsible for its failure to offer such a leave. While the courts agree that leaves of absence should be granted where disabled persons seek treatment, this court's research reveals no caselaw which states that employers are required to provide administrative paid leave as a reasonable accommodation.

Plaintiff argues that visually impaired employees at the CBVH were supplied with equipment, such as special computers, as a reasonable accommodation, and then were given training on the equipment with no charge to their leave credits. As such, Plaintiff claims that the training with his guide dog is analogous to the other employees' computer training, as both the computers and the guide dog make it possible for the visually impaired employees to work independently. However, the equipment on which these other employees were trained is equipment which is owned and provided by the Defendants for the employees use at work. Plaintiff's guide dog, while certainly used at work by the Plaintiff, is owned personally by the Plaintiff and is used by Plaintiff in his daily life to give Plaintiff greater mobility and independence.

The regulations clearly provide that a seeing eye dog is a personal assistance device which an employer should allow an employee to use at work. 29 C.F.R. § 1630.2(*o* ). As an employer is not required to supply a guide dog to a blind employee, there is no basis on which to require an employer to supply administrative paid leave to a blind employee for purposes of training his guide dog, even if that employee uses the guide dog for some work purposes. A reasonable accommodation has been made by Defendants by allowing a blind employee to use their accrued leave credits to attend guide dog training, and by allowing an employee with insufficient leave credits to obtain advance credits so that the employee is not required to forego a salary loss during the time in which he is attending training. Any further accommodation would open the door to varying claims, such as a hearing impaired person seeking administrative leave time for training or treatment with hearing aids which would enable that person to perform his work duties more efficiently, or an individual needing training with a prosthesis in order for him to perform his job functions more quickly. While the cost of restoring Plaintiff's leave credits would not be an undue hardship to Defendants, the precedent which this would set could result in many claims involving substantial sums of money. Neither the statute, the caselaw, nor the regulations support an interpretation as suggested by Plaintiff.

The court concludes that Plaintiff was given a reasonable accommodation at the time he was allowed to use his accrued leave credits to attend guide dog training. Paid leave without the use of accrued leave credits would go beyond that which is "reasonable." "The government is not obligated under the statute to provide [a] plaintiff with every accommodation which he may request, but only with reasonable accommodation as is necessary to enable him to perform his essential functions." *Carter v. Bennett,* 651 F.Supp. 1299, 1201 (D.D.C.1987). In this case, Defendants clearly provided Plaintiff with a reasonable accommodation for his disability. Accordingly, Plaintiff's motion for summary judgment is DENIED, and Defendants' cross-motion for summary judgment is GRANTED.

The court notes that Plaintiff has raised a due process and equal protection argument that Defendants should be ordered to amend their procedures for granting leave to persons obtaining training for guide dogs to ensure that Plaintiff and other blind persons are afforded procedural due process and equal protection under the law. However, as the court has ruled in favor of Defendants, this argument is moot.

## CONCLUSION

Based on the foregoing discussion, Plaintiff's motion for summary judgment is DENIED. Defendants' cross-motion for summary judgment is GRANTED, and the case is hereby dismissed, without costs.

SO ORDERED.