**Eric N. KEMER, Plaintiff,**

v.

**Roger JOHNSON, Administrator, General Services Administration, Defendant.**

**No. 93 Civ. 6965 (DAB).**

United States District Court, S.D. New York.

Oct. 16, 1995.

Eric N. Kemer, Rockaway Park, NY, pro se.

Marianne T. O'Toole, Assistant U.S. Attorney, Mary Jo White, New York City, for defendant.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff Eric N. Kemer, proceeding *pro se,* filed this action claiming that the General Services Administration ("GSA") unlawfully discriminated against him on the basis of a disability in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Defendant now moves to dismiss the Plaintiff's ADA claim. In anticipation of this Court's reading of the Amended Complaint to include a claim under the Rehabilitation Act of 1973, as amended ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.,* Defendant also moves for summary judgment. Plaintiff opposes the motion. For the following reasons, the Defendant's motion is granted.

## I. BACKGROUND

Plaintiff alleges discrimination in employment on the basis of disability in violation of Title I of the ADA, and seeks retroactive back pay and monetary compensation for pain and suffering. (Am.Compl. at 3.)

Plaintiff Kemer claims to suffer from a disability.[1] (Am.Compl. at 1.) On August 4, 1990, Kemer prepared an employment application at the New York City employment branch of the General Services Administration. (Def.'s Local Rule 3(g) Statement [hereinafter Def. 3(g)] ¶ 1.) He submitted this application to Gino B. Combi ("Combi"), Chief of the Employment Branch of GSA. (Def. 3(g) ¶ 1.) In or about September 1990, Kemer called Combi regarding the status of his application. (Def. 3(g) ¶ 2.) Combi explained that there were deficiencies in Plaintiff's application, (Gerwin Aff.Ex. A (Letter from Kemer to Lowden of 1/31/91), at 1), and asked him to fill out another more completely. (Def. 3(g) ¶ 2; Gerwin Aff.Ex. H (Aff. of Gino B. Combi of 1/11/93) [hereinafter Combi Aff.] ¶ 6.) According to Combi, he specifically asked plaintiff to provide more information regarding previous employment. (Combi Aff. ¶ 6.) Combi sent Plaintiff a blank application along with the allegedly incomplete one.[2] (Def. 3(g) ¶ 2.) Kemer never submitted a second application. (Def. 3(g) ¶ 3.)

---

1. Plaintiff does not describe the nature of his disability in any way, merely stating in the Amended Complaint: "I suffer a disability all my life...." (Am.Compl. at 1.) The opinion of the EEOC Administrative Law Judge explains that Plaintiff "was diagnosed by Dr. Jerome Kessel as having depressive neurosis and a schizotypal personality disorder." (Gerwin Aff.Ex. F (*Kemer v. Fischer,* EEOC Hearing No. 160–93–8099X, slip. op. of 6/2/93), at 4.)

2. Combi claims to have sent Plaintiff a second application only because Plaintiff had indicated to Combi that he was disabled. Had Kemer not claimed to be disabled, Combi claims that his application would have been returned to him along with a letter stating that there were no job vacancies at that time. (Combi Aff. ¶ 6.)

At some point Kemer visited Combi's office and attempted to meet with Combi. Kemer claims that during this visit Combi called him a "bastard" several times in front of other federal employees and a friend of Kemer's. (Am.Compl. ¶ 4.) Combi testifies by affidavit that he does not recall referring to Combi as a "bastard," but that Kemer did appear in Combi's office on one occasion without an appointment "in a very excited and agitated state," that Combi was too busy to meet with him, and that after Kemer ignored Combi's request that he leave, Combi told Kemer to leave "in a very firm voice." (Combi Aff. ¶ 11.)

By letter dated January 31, 1991, Kemer filed a discrimination complaint with the Regional EEO Officer of GSA alleging discrimination based on disability due to Combi's rejection of his application and the return of his application without a written explanation of the alleged mistakes. (Gerwin Aff.Ex. A (Letter from Kemer to Lowden of 1/31/91); Def. 3(g) ¶ 4.) [3]

GSA investigated the incident between February 27 and March 3, 1992. (Def. 3(g) ¶ 7.) On June 2, 1993, Administrative Law Judge Edwina L. St. Rose granted summary judgment against Kemer. (Gerwin Aff.Ex. F (Kemer v. Fischer, EEOC Hearing No. 160–93–8099X, slip. op. of 6/2/93); Def. 3(g) ¶ 8.) GSA issued a final decision on June 17, 1993. (Gerwin Aff.Ex. G (Letter from Latimer to Kemer of 6/17/93); Def. 3(g) ¶ 9.) Kemer then brought this suit in federal court claiming that the GSA discriminated against him on the basis of his disability in violation of Title I of the ADA. (Compl. ¶ 1.)

In lieu of answering Plaintiff's Amended Complaint, Defendant now moves for dismissal of Plaintiff's ADA claim pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Defendant does not rest on its motion to dismiss, however; recognizing the Court's obligation to deny any motion to dismiss unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (1991) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)), Defendant also moves for summary judgment, pursuant to Fed. R.Civ.P. 56, against an unarticulated Rehabilitation Act claim.[4]

For the reasons stated below, Defendant's motions are granted.

## II. DISCUSSION

### A. Plaintiff's ADA Claim

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit*

---

**3.** The Regional EEO Officer of GSA rejected Plaintiff's complaint as untimely pursuant to 29 C.F.R. 1613.215, (Gerwin Aff.Ex. B (Letter from Lowden to Kemer of 3/21/91); Gerwin Aff.Ex. C (Letter from Lowden to Kemer of 5/13/91); Def. 3(g) ¶ 4), and the Equal Employment Opportunity Commission ("EEOC") affirmed the rejection in a decision dated July 19, 1991. (Gerwin Aff. Ex. D (Decision of Dolores L. Rozzi, Director, Office of Federal Operations, dated 7/19/91); Def. 3(g) ¶ 5.) On August 2, 1991, Kemer filed a request with the EEOC to reopen and reconsider the July 19, 1991 decision. (Def. 3(g) ¶ 6; Am. Compl. ¶ 3.) The EEOC granted the request, finding that the complaint had been improperly rejected as untimely, and remanded the complaint for further review. (Gerwin Aff.Ex. E ("Granting of Request to Reopen" dated

12/30/91, issued by Frances M. Hart, Executive Officer, Executive Secretariat of the EEOC); Def. 3(g) ¶ 6.)

**4.** While motions for summary judgment prior to an answer being filed are not the standard procedure before this Court, *see* Rule 16 of this Court's Individual Rules (discouraging motions for summary judgment prior to the completion of discovery, except for extraordinary cause shown), Rule 56(b) of the Federal Rules of Civil Procedure provides that "[a] party against whom a claim ... is sought may, *at any time*, move ... for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b) (emphasis added).

*Authority,* 941 F.2d 119 (2d Cir.1991)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

■ Defendant challenges Plaintiff's ADA claim on the basis of the ADA's explicit exclusion of the federal government from coverage, and the fact that the Defendant is an agency of the federal government. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a). The term "covered entity" includes employers, 42 U.S.C. § 12111(2), but the United States is specifically excluded from coverage as an employer. 42 U.S.C. § 12111(5)(B)(i).

The defendant here, Roger Johnson, is sued in his official capacity as the Administrator of the General Services Administration; the General Services Administration is an agency of the United States government. Suits against officers of federal agencies in their official capacities constitute suits against the United States. *See B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 723 (2d Cir.1983) ("The suit is indeed against the United States. The complaint names it as a defendant. Even if the complaint had named only the Secretary of Defense and the Commanding General of CECOM, the suit would still have been against the United States.") Accordingly, because Plaintiff seeks to sue an agency of the federal government as an employer under the ADA, Plaintiff's ADA claim must be dismissed.

**5.** As to the statute relied upon for his claim, the Amended Complaint merely states: "Mr. Combi committed a serious discrimination against me in violation of the ADA law[,] title I[,] # 5[,] which forbids using qualification standards or other selection criteria that screen out disabled persons." (Am.Compl. ¶ 1.)

**6.** Even though the ADA, in and of itself, does not provide Plaintiff with a sustainable cause of action, as discussed above, the applicability of the ADA to this claim must be clarified. Specifically, it must be noted that the Rehabilitation Act, 29 U.S.C. § 794(d), dictates that "[t]he standards used to determine whether [the Rehabilitation Act] has been violated ... shall be the standards applied under title I of the Americans with Disabilities Act of 1990...." With this in mind, Plaintiff's invocation of Title I of the ADA in his Amended Complaint, and elsewhere, is entirely appropriate, though all would have been assisted

■ Even though the ADA is the only statute specifically invoked by the Plaintiff in his Amended Complaint,[5] the entire complaint cannot be dismissed. The Supreme Court and the Second Circuit have been very clear in counseling "district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel." *Platsky,* 953 F.2d at 28; *see, e.g., Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam). "In order to justify the dismissal of a *pro se* complaint, it must be 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Platsky,* 953 F.2d at 28 (quoting *Haines v. Kerner,* 404 U.S. at 521, 92 S.Ct. at 595).

Though Plaintiff's ADA claim cannot stand because the ADA does not apply to agencies of the United States, the Rehabilitation Act also prohibits discrimination against the disabled in the employment context and the Rehabilitation Act does apply to federal agencies. 29 U.S.C. § 794(a). Accordingly, because he is *pro se,* Plaintiff's Amended Complaint will be construed by this Court to state a cause of action under the Rehabilitation Act.[6]

by simultaneous reference to the Rehabilitation Act and its incorporation of the relevant ADA standards.

This complication does not end so easily, however, because the effective date of the amendment that added 29 U.S.C. § 794(d)—October 29, 1992—postdates the dates of the actions complained of herein: August to September 1990. Pub.L. 102–569, § 138, as amended Pub.L. 103–73, Title I, § 102(3), 107 Stat. 718 (reprinted in Historical and Statutory Notes, 29 U.S.C.A. § 701 (West Supp.1995)) (setting forth effective date of 1992 amendment). With the actions having occurred prior to the effective date of the amendment, this Court must determine the applicability of the ADA standards—if any—to this cause of action. Neither of the parties has addressed this issue. Accordingly, this Court will rely on case law predating the amendment, with citation to applicable ADA sections where the case law and the statute are consistent.

In anticipation of this result, Defendant has moved for summary judgment against any Rehabilitation Act claim that Plaintiff's Amended Complaint may be read to contain.

### B. Plaintiff's Rehabilitation Act Claim

#### 1. *Summary Judgment Standards*

Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A court must view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "However, where the nonmoving party bears the burden of proof as to a particular issue, the moving party may satisfy his burden under Rule 56 by demonstrating an absence of evidence to support an essential element of the nonmoving party's claim." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "[W]here the moving party has attempted to demonstrate that the nonmoving party's evidence is insufficient as a matter of law to establish his claim, the burden shifts to the nonmoving party to come forward with persuasive evidence that his claim is not 'implausible.' The question then becomes, is there sufficient evidence to reasonably expect [sic] that a jury could return a verdict in favor of the nonmoving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988).

#### 2. *Plaintiff's Claims*

Kemer alleges that he was discriminated against, both by the application of qualifying standards that screen out the disabled, (Am.

Compl. ¶¶ 1–2) (focusing in paragraph 2 on employment gaps attributable to Plaintiff's disability), and by verbal abuse from Combi, (Am.Compl. ¶ 4). According to the Amended Complaint, "[t]he main issue here are [sic] gaps in my employment record used by a heartless beaucrat [sic] to deny me a mere trainee position." (Am.Compl. at 3.) In other papers, Kemer complains that Combi failed to assist him in completing an application for employment with the GSA. (Pl.'s Aff. dated Oct. 21, 1994, at 4; Combi Aff. ¶ 8.)

In response to these allegations of discrimination, now under consideration as claims made pursuant to the Rehabilitation Act, Defendant moves for summary judgment claiming: (1) that Plaintiff cannot demonstrate that he was disabled, and thus cannot make out a *prima facie* case; (2) that Plaintiff cannot demonstrate that he was otherwise qualified, and thus cannot make out a *prima facie* case; and (3) that even if Plaintiff makes out a *prima facie* case, Plaintiff cannot show that defendant's legitimate, nondiscriminatory reason for not awarding Plaintiff an interview is pretextual or that he was not awarded a position as a result of discriminatory animus.

#### 3. *Rehabilitation Act Standards*

The Rehabilitation Act of 1973, 29 U.S.C. § 794, provides, in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in Section 706(8) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency....

29 U.S.C. § 794(a).[7]

The Second Circuit has made clear that

[t]he plaintiff in a Rehabilitation Act suit bears the initial burden of establishing a *prima facie* case under the Act. The bur-

---

**7.** This quotation incorporates the changes made by the 1992 Amendment, Pub.L. 102–569, § 102(p)(32). The changes with respect to this section were nonsubstantive, merely substituting

"a disability" for "handicaps" and "disability" for "handicap". *See* Historical and Statutory Notes, 29 U.S.C.A. § 794 (Supp.1995).

den then shifts to the employer. If the employer asserts a neutral reason, unrelated to plaintiff's handicap, for its employment decision, then its burden is to 'articulate a legitimate non-discriminatory reason for discharging the employee.' *See Gallo [v. Prudential Residential Servs.,* 22 F.3d 1219, 1224–25 (2d Cir.1994) ]. The burden then shifts back to the plaintiff to show that the employer's stated reason is really a pretext for discrimination. *Id.* But if the employer relies on plaintiff's handicap as the reason for the adverse employment decision, then its burden is 'to rebut the inference that the handicap was improperly taken into account by going forward with evidence that the handicap is relevant to qualifications for the position.' *Doe v. New York Univ.,* 666 F.2d 761, 776 (2d Cir.1981). The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that she is qualified despite her handicap.

*Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994). To make out a *prima facie* case, the Plaintiff must show the following: (1) that he is disabled within the meaning of the Rehabilitation Act; (2) that he is "otherwise qualified" for the position; (3) that he was excluded from that position solely because of his disability; and (4) that the program sponsoring the position receives federal funding. *Guice–Mills v. Derwinski,* 967 F.2d 794, 797 (2d Cir.1992); *Heilweil,* 32 F.3d at 722. To survive a motion for summary judgment, among other things, a plaintiff must make a *prima facie* showing that each of these elements is satisfied. *Heilweil,* 32 F.3d at 724.

a. *"Individual with a Disability"*

Section 706(8)(A) of Title 29 of the United States Code provides, in pertinent part:

[T]he term "individual with a disability" means any individual who (i) has a physical or mental impairment which for such individual constitutes or results in a substantial impairment to employment and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services provided pursuant to subchapter I, III, VI, or VIII of this chapter.

■ Defendant states initially that its motion seeks to challenge Plaintiff's status as disabled; Defendant recites not one fact supporting its contention that Plaintiff is not disabled. Because Defendant has failed to offer any support for this contention, it has thereby failed to "satisfy [its] burden under Rule 56 by demonstrating an absence of evidence to support an essential element of the nonmoving party's claim." *See Kedra v. Nazareth Hosp.,* 868 F.Supp. 733, 740–41 (E.D.Pa.1994).

Contrary to Defendant's bald assertions, there is evidence before the Court of Plaintiff's disability. The decision of the Administrative Law Judge states:

According to a statement submitted in response to the EEO Investigator's inquiry regarding Complainant's mental disability, the Vocational and Educational Services for Individuals with Disabilities (VESID) District Office Manager reported that on April 5, 1985, Complainant was diagnosed by Dr. Jerome Kessel as having depressive neurosis and a schizotypal personality disorder. Dr. Kessel found that Complainant's "thinking tends to be circumstantial, tangential and overly intellectualized. Paranoid and obsessive trends present."

Dr. Kessel further noted that "client should be in regular individual psychotherapy to help him deal with problems of confusion about goals in life, suspicioness [sic] of others and poor interpersonal relationships in general."

*Kemer v. Fischer,* EEOC Hearing No. 160–93–8099X, slip. op. at 4–5 (June 2, 1993). Indeed, the affidavit of Defendant's employment Chief states:

It should be noted that when I first interviewed Mr. Kemer in August, 1990, he exhibited flashes of hostility. By this I mean that he informed me, in a manner that can only be described as belligerent, that he would be carefully monitoring his situation and he would go to the media and disparage our agency if he did not get satisfaction. This occurred twice. I found it difficult to understand because there was no cause for it. We had been having a very normal conversation up to this time.

What was also unusual was that the conversation returned to normal after the flashes of anger. Since he had indicated to me that he was handicapped, I decided that I would attempt to assist him. In any other circumstance, I would have terminated the interview.[8]

(Combi Aff. ¶ 15.)

Coupling this evidence suggesting a disability on Plaintiff's part with the statutory definition of disability as "a physical or mental impairment which for such individual constitutes or results in a substantial impairment to employment," 29 U.S.C. § 706(8)(A), and having no evidence suggesting otherwise from the Defendant, I find this requirement of Plaintiff's *prima facie* case established for the purposes of this motion.

### b. *"Otherwise Qualified"*

■ With disability established, the second requirement of the *prima facie* case is that Plaintiff be "otherwise qualified." Defendant argues that Plaintiff's failure to submit a completed application—"an essential prerequisite for a job interview"—bars Plaintiff from being "otherwise qualified."

■ The Rehabilitation Act prohibits employers from discriminating against "otherwise qualified individuals with a disability"; thus, only disabled persons who are otherwise qualified for employment are protected by the statute. An "otherwise qualified" person is one who, with or without reasonable accommodation, can perform the essential functions of the position in question. *Gilbert v. Frank*, 949 F.2d 637, 641–42 (2d Cir.1991)

("a plaintiff must . . . show that she or he can perform the essential functions of the job in spite of the handicap either (a) with no need for accommodation, or (b) with a reasonable accommodation."); *Fink v. New York City Dept. of Personnel*, 855 F.Supp. 68, 70 (S.D.N.Y.1991). Here, the Government does not directly address whether Plaintiff can perform the essential functions of the manager trainee position.[9] Instead, the Defendant seeks to disqualify Plaintiff for having failed to submit a properly completed employment application.

Kemer alleges he was "denied a mere trainee job . . . because . . . I have employment gaps in my application, which is true because of dead end jobs I had for years." (Pl.'s Aff. dated Oct. 21, 1994, ¶ 3.) Likewise, the Combi affidavit states that

> Upon reviewing [Kemer's application] form, it became apparent that the blocks were not completely and fully answered nor was the form done in a neat manner. Furthermore, the application contained employment gaps. The instructions in Block 24 of the SF–171 clearly state:

> "Describe your most current or recent job in Block **A** and work backwards, describing each job you held **during the past 10 years.** If you were **unemployed** for longer than **three months** within the past 10 years, list the dates and your address(es) in an experience block."

> Since Mr. Kemer had indicated to me that he was a handicapped individual, I planned to call him and give him another

---

**8.** It should be noted that Defendant does not raise, and thus it is not at issue here, whether Plaintiff should not be considered "otherwise qualified" because his behavior (caused by his disability) would interfere with the essential functions of the job applied for, or that others were more qualified due to Plaintiff's disability-caused behavior. The Defendant does not argue this in any way in this motion, nor does the affidavit of Defendant's employment chief suggest reliance thereon for rejection of Plaintiff. Instead, Defendant places *all* reliance in this motion on Plaintiff's failure to submit a "complete" employment application.

**9.** In this instance, the Government raises an issue without discussion and without providing evidentiary support. Specifically, the Government challenges the Plaintiff's claims because

"he has failed to allege that he was qualified for the manager trainee's position in all other respects and that he was not selected for the position solely because of his handicap." (Def.Mem. of Law at 12.) Plaintiff states, however, that he has a degree in government and a paralegal certificate and yet was denied a "mere trainee job". (Pl.Aff. filed Oct. 21, 1994 (Docket No. 18:93 Civ. 6965(DAB)), ¶ 3.) Interpreting this *pro se* Plaintiff's allegations broadly, the phrase "mere trainee job," used in comparison with his qualifications, constitutes a sufficient allegation that he was qualified for the manager trainee's position in all other respects. Plaintiff's allegation of qualification is supported by Combi's statement that "We found him basically eligible for a trainee position based on his baccalaureate degree." (Combi Aff. ¶ 12.)

chance to complete an improved application. Ordinarily, an application such as his would be returned to the applicant with a letter stating that we have no vacancies for which he could be considered. However, before I had the opportunity to call him, he called me. Several weeks had passed since he filed his application. I explained the deficiencies in his application and asked him to complete another one. I sent back his original application with a blank copy of a new one.

Mr. Kemer never filed a new application with us.

(Combi Aff. ¶¶ 5-7 (emphasis in original).) Kemer admits that he "was told there were 'mistakes' on [his] application," and acknowledges that his application was returned to him, though he complains·that the application was returned "without any letter or note" pointing out the mistakes. (Gerwin Aff.Ex. A (Letter from Kemer to Lowden of 1/31/91), at 1). Further, the Amended Complaint recounts that Combi's "main charge was gaps in my employment record...." (Am.Compl. ¶ 2.)

Thus, Plaintiff's application was returned to him because he had left blanks in his application, despite the fact that the instructions specifically directed him to insert his address to represent periods of unemployment. Plaintiff's allegation that he was rejected on the merits because of "employment gaps" attributable to "dead end jobs" is not supported by the facts; instead, his employment application was returned to him for proper completion. Because consideration of Plaintiff's application never made it to the point where a substantive review would occur and an applicant would be rejected based on insufficient experience or "employment gaps," it cannot be, as Plaintiff alleges, that he was rejected because he had experienced "employment gaps."

Plaintiff seeks to challenge a rejection that never occurred, and is seeking the benefit of an application that in essence was never completed and filed. Filing an application is an essential prerequisite to a job interview, and thus, an essential prerequisite to consideration for any position at GSA. (Combi Aff. ¶¶ 4, 7.) Because he failed to complete his application, Plaintiff has not made out a *prima facie* case that he is "otherwise qualified."

▮ This does not end the "otherwise qualified" inquiry, however, since under the Rehabilitation Act, employers are under a duty to make reasonable accommodation to the known mental and physical limitations of a qualified applicant or to demonstrate that the accommodation would impose an undue hardship in its operations. *See Gilbert*, 949 F.2d at 641–42; 42 U.S.C. § 12112(b)(5)(A) (ADA section applicable under the 1992 amendment to the Rehabilitation Act, now 29 U.S.C. § 794(d)). Thus, before this Court can find that Plaintiff has failed to establish that he is "otherwise qualified," it must consider whether Plaintiff has suggested a reasonable accommodation that would bring him into qualification for the manager trainee position. *See, e.g., Gilbert*, 949 F.2d at 641–42; *Fink*, 855 F.Supp. at 71–72. In this vein, several of Plaintiff's allegations suggest that Combi should have accommodated him by assisting him in completing the application form.[10]

▮ To set out a claim for reasonable accommodation on these facts, Plaintiff must show—among other things—that his inability to complete properly the employment application is attributable to his disability. This is so because employers are only required to make reasonable accommodation to the known mental and physical limitations of a qualified applicant. *See Gilbert*, 949 F.2d at 641–42; 42 U.S.C. § 12112(b)(5)(A). If the accommodation is not required by a mental or physical limitation, then it is not required by the Rehabilitation Act. Plaintiff, though obliquely protesting the failure of Mr. Combi to assist him with the application, offers no proof, nor even an unsupported allegation,

---

**10.** See, for instance, Plaintiff's statement in his initial letter of complaint to the GSA Regional EEO Officer, that Mr. Combi "returned my appl[ication] *without any letter or note* to where my alleged mistakes were." Gerwin Aff.Ex. A (Letter from Kemer to Lowden of 1/31/91) at 1 (emphasis in original). The placement of emphasis by Plaintiff on "without any letter or note" may be intended to convey that conduct as the basis of his claim.

that his disability interfered with his ability to complete successfully the employment application form.[11] Accordingly, Plaintiff's claim for reasonable accommodation in the form of assistance with the employment application must fail, because his failure to complete the application was not caused by his disability.

■ Furthermore, Defendant provided a reasonable accommodation to the Plaintiff in the form of an oral explanation of the deficiencies in the submitted application (deficiencies which were created by Plaintiff's failure to follow the form instructions), transmittal to Plaintiff of the submitted application along with a blank application, and an invitation to complete properly the blank application and resubmit it. Once a reasonable accommodation has been made, a defendant has fulfilled its obligation to make an accommodation. *Fink,* 855 F.Supp. at 72; *cf. Ansonia Board of Education v. Philbrook,* 479 U.S. 60, 68, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (reversing the Second Circuit's holding in the Title VII context that an employer must accept the employee's preferred accommodation absent proof of undue hardship). Thus, Defendant was not required to make Plaintiff's suggested accommodation, even if reasonable, since a reasonable accommodation had already been made. Accordingly, Plaintiff cannot rely on Defendant's failure to make a reasonable accommodation to excuse his failure to complete an employment application.

#### c. *Solely by Reason of Plaintiff's Disability*

■ The third requirement of a *prima facie* case has been stated as requiring a Plaintiff to show that he was ·"excluded from the position solely because of his disability." *Guice–Mills,* 967 F.2d at 797. This requirement is problematic for Kemer because his papers and the Amended Complaint contain no suggestion that his disability is somehow connected to his failure to submit a properly completed application. Instead, his argument is that his disability accounts for his

"employment gaps." The gaps due to "dead end jobs" and unemployment, however, are not responsible for the return of the initial application to Plaintiff. Accordingly, without alleging some causal connection between the disability and the failure to complete the application according to the form's instructions, Plaintiff cannot show that he was excluded from the position "solely because of his disability." *See Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511, 515–17 (2d Cir.1991).

Even applying the low standards applicable on a summary judgment motion as to the causal relationship, and examining the facts in the light most favorable to the Plaintiff, *see id.* at 515, no causal connection between the challenged qualification standard and Plaintiff's rejection exists. Accordingly, Plaintiff has failed to make out the causal connection required to satisfy the third prong of the *prima facie* case as well.

Because Plaintiff has not made out a *prima facie* case, summary judgment for the Defendant is appropriate. *Heilweil,* 32 F.3d at 724; *Sedor v. Frank,* 42 F.3d 741, 746 (2d Cir.1994) ("If proof of any of the four elements [of the *prima facie* case] is lacking, the claim must fail.")

Having failed to establish a *prima facie* case, the Court need not address whether Defendant's legitimate, non-discriminatory rationale suffices to shift the burden back to the Plaintiff.

### III. CONCLUSION

Plaintiff having failed to make out a *prima facie* case, Defendant's motion for summary judgment is granted. The Clerk shall enter judgment in favor of the Defendant.

SO ORDERED.

---

11. Plaintiff nowhere claims that his disability interfered with his ability physically to complete the application blanks; rather, Plaintiff claims that the disability caused the employment "gaps" themselves, i.e., caused his periods of unemployment.