Leroy GILBERT, Plaintiff–Appellant,

v.

Anthony M. FRANK, in his capacity as Postmaster General of the United States Postal Service, Defendant–Appellee.

No. 161, Docket 91–6105.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1991.

Decided Nov. 27, 1991.

Kipp Elliott Watson, New York City, for plaintiff-appellant.

Bernard W. Bell, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty.,

S.D.N.Y., Thomas A. Zaccaro, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before KEARSE, MINER and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Leroy Gilbert appeals from a final judgment of the United States District Court for the Southern District of New York, Leonard B. Sand, Judge, dismissing his complaint alleging that defendant Anthony M. Frank, in his capacity as Postmaster General of the United States Postal Service ("Postal Service"), discriminated against him in employment because of his physical handicap, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* (1988) (the "Act"). Following a bench trial of issues as to liability, the district court found that, within the meaning of the Act, Gilbert was not handicapped and was not "otherwise qualified" for the position he sought. On appeal, Gilbert principally challenges these findings. Though we do not agree with the court's finding of no handicap, we conclude that Gilbert had not presented a prima facie case because he did not show that he was otherwise qualified for the position. We therefore affirm the judgment dismissing the complaint.

## I. BACKGROUND

A number of the material facts were not in dispute. Gilbert suffered from polycystic kidney disease ("PKD"), a disorder that involves the formation of multiple cysts in the kidneys. PKD cysts are filled with blood or a urine-like fluid, and their presence interferes with the normal functioning of the kidneys. In 1982, when Gilbert's system had deteriorated to the point where he was approaching terminal kidney failure, he began dialysis, which provides a mechanical substitute for the functioning of healthy kidneys. From that time on, he needed three dialysis treatments, each lasting 3½ hours, every week.

Following the initiation of his dialysis treatments in 1982, Gilbert applied to the Postal Service for the position of Manual [Mail] Distribution Clerk, Part-time, Flexible schedule ("Manual MD Clerk" or "MDC"), at the General Post Office ("GPO") in Brooklyn, New York; in 1985, he again applied to the Postal Service for a Manual MD Clerk position, this time at the GPO in Manhattan. Both of his applications were rejected. After each rejection, Gilbert commenced a suit under the Rehabilitation Act; both of those suits were dismissed for failure to exhaust administrative remedies.

In dismissing the second action, the district court found, *inter alia,* that the positions for which Gilbert had applied "required that plaintiff be capable of lifting 70 pounds," and that in connection with the Postal Service's 1982 rejection, "the basis for this determination was a letter written by Gilbert's treating physician, Dr. [Joseph T.] McGinn, stating that plaintiff was able to lift 'up to 25 pounds.'" *Gilbert v. Tisch,* No. 86–3933, slip op. at 2, 1987 WL 14908 (S.D.N.Y. July 20, 1987). In connection with its rejection of Gilbert's 1985 application, the Postal Service informed Gilbert that he had been found medically unsuitable for the position he sought, stating as follows:

A review of your medical records and evaluation by our Medical Officer revealed that as per private doctor note— you are not able to perform as per physical requirements of position description. Kidney dysfunction. This condition is *not* compatible with the strenuous activities required for this position, which includes heavy lifting, pushing, pulling, repetitive stretching and reaching. Under these conditions, postal employment would place your personal health and safety in jeopardy.

(Joint Pre-trial Order ("Pretrial Order") at 9.)

The present action was commenced in 1988. Though there remained some question as to exhaustion, the district court concluded that, in light of the loss of certain administrative records and questions as to the notice given Gilbert with respect to filing deadlines, the court should reach the merits of his claims. Bifurcating the

issues of liability and remedies, the district court conducted a seven-day trial on liability. Many of the facts and events had been stipulated in the Pretrial Order, and most of the trial was devoted to medical evidence, discussed in greater detail in Part II.B. below, as to Gilbert's ability to perform the weight-lifting aspects of the Manual MD Clerk position.

Following the liability trial, the district court, in an Opinion dated February 19, 1991 ("Opinion"), found that Gilbert "d[id] not meet the statutory criteria under the Rehabilitation Act for an 'individual with handicaps,'" Opinion at 8, and dismissed his claim as "entirely without merit," *id.* at 11. The court found that Gilbert had not made a prima facie showing that he was a handicapped person principally because "[h]is end-stage renal condition has been adequately dealt with by dialysis and his PKD has not substantially limited any of his major life activities nor does it rise to the level of a 'physical impairment' within the meaning of the Act." *Id.* at 8–9.

The court also ruled that Gilbert would not be entitled to relief under the Act even if he had shown himself to be a handicapped person because he had failed to show that he was "otherwise qualified" to perform the job of Manual MD Clerk, as required by § 504 of the Act. The court noted that the Manual MD Clerk position

> is a position in the Postal Service which involves continuous standing, stretching, and reaching. Clerks may be required to handle heavy sacks of letter mail or parcel post weighing up to 70 pounds. Such clerks are also called upon to carry packages and to push heavy postal wheeled containers. The lifting, carrying and moving of such objects are among the "essential functions" of the MDC. The job is clearly one which calls for extended strenuous physical exertion.

Opinion at 3. It found that "the performance of the heavy lifting, carrying and pushing is an essential aspect of the tasks assigned to an MDC–[Part-time, Flexible schedule]. At an entry level, a[n] MDC performs the more arduous tasks. Jobs which require less physical exertion are awarded, based on seniority." *Id.* at 7. As to Gilbert's ability to perform these tasks, the court credited principally (a) the 1982 evaluation of Gilbert's treating physician describing Gilbert as not capable of lifting more than 25 pounds; (b) the 1985 recommendation of another of his treating physicians that Gilbert "should be restricted from 'heavy lifting' and any physically traumatic activities," *id.* at 3–4; and (c) the opinion of the Postal Service's expert witness that there was a greater than 50% chance of Gilbert's sustaining rupture of a cyst if he were employed as a Manual MD Clerk and that it was therefore not medically advisable for Gilbert to perform that job. The district court concluded that Gilbert was not "otherwise qualified" within the meaning of the Act because he "could not perform essential functions of the MDC job without significant medical risk." *Id.* at 9. The court also concluded that because Gilbert had not shown himself to be handicapped or otherwise qualified for the position he had sought, the Postal Service was not required to show that it had offered to provide him with "reasonable accommodation." *Id.*

Judgment was entered dismissing the complaint, and this appeal followed. On appeal, Gilbert pursues his claim under § 504 of the Act, contending principally that the district court erred in finding (1) that he was not handicapped under the Act and (2) that he was not "otherwise qualified" for the job of Manual MD Clerk. Though our analysis of the requirements of the Act differs from that of the district court, we conclude that Gilbert did not establish a prima facie case of discrimination under the Act and that it was therefore proper to dismiss his complaint. Our decision is constrained to an extent by the tactical choices made by Gilbert as to the theories he has pursued at trial and in this Court.

## II. DISCUSSION

The Rehabilitation Act, which was intended to deter discrimination against handicapped individuals and to expand their employment opportunities and their inte-

gration into society, *see* 29 U.S.C. § 701, prohibits the Postal Service, *inter alios,* from discriminating against handicapped individuals solely by reason of their handicaps, *see generally School Board of Nassau County v. Arline,* 480 U.S. 273, 277–79, 107 S.Ct. 1123, 1125–27, 94 L.Ed.2d 307 (1987) (*"Arline"*). Section 504 of the Act provides, in pertinent part, as follows:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. Section 501 of the Act, 29 U.S.C. § 791, and the regulations promulgated thereunder by the Equal Employment Opportunity Commission call for federal government agencies and the Postal Service to be "model employer[s] of handicapped individuals," 29 C.F.R. § 1613.703 (1991).

Only persons "who are both handicapped *and* otherwise qualified are eligible for relief" under the Act. *Arline,* 480 U.S. at 285, 107 S.Ct. at 1129 (emphasis in original). Thus, to establish a prima facie case under § 504, a plaintiff bears the burden of proving, *inter alia,* that (1) she or he was an "individual with handicaps" within the meaning of the Act, and (2) that she or he was "otherwise qualified" for the desired position. *See, e.g., Doe v. New York University,* 666 F.2d 761, 774–76 (2d Cir.1981).

### A. *Whether Gilbert Was an Individual With Handicaps*

■ Section 706(8) of the Act defines the term "individual with handicaps," in pertinent part, as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, [or] (ii) has a record of such an impairment." 29 U.S.C. § 706(8)(B). On this appeal, Gilbert does not challenge the district court's finding that he did not meet the first prong of the test, *i.e.,* the finding that he did not have, at the time of his employment applications, an "impairment which substantially limit[ed] one or more of [his] major life activities," *id.* § 706(8)(B)(i). Rather, he contends that the court erred in not finding that he met the second prong, *i.e.,* that he was covered by the Act because he "ha[d] a record of such an impairment," *id.* § 706(8)(B)(ii).

The difficulty with Gilbert's present contention is that it was not the basis on which the case was tried in the district court. Though we have some discretion to consider an issue not passed upon by the district court, *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), and we have done so where the plaintiff has brought all of the pertinent facts to the district court's attention and there are only legal, not factual, disputes, *see, e.g., Bornholdt v. Brady,* 869 F.2d 57, 68 (2d Cir.1989), we do not deem it appropriate to consider the record-of-impairment issue here. Here, the district court was not alerted that this was the nature of Gilbert's claim, for neither the extensive Pretrial Order setting forth the parties' contentions nor the parties at trial described the claim in this way. Further, Gilbert did not offer any evidence to suggest that the Postal Service's failure to hire him was caused simply by his medical history. *See Doe v. New York University,* 666 F.2d at 776 (causal connection is part of prima facie case). The issue not having been pursued by Gilbert in the district court and the court having conducted a seven-day trial on the case as Gilbert did present it, we decline to consider his new theory here or to remand to permit the case to be retried on that theory.

■ On the other hand, though Gilbert does not argue that he met the first prong of the individual-with-handicaps test, *i.e.,* that PKD was a physical impairment that substantially limited one or more of his major life activities at the time of his employment applications, we are constrained to note our disagreement with the district court's rejection of that premise. Regula-

tions promulgated under the Act by the Department of Health and Human Services ("HHS") and its predecessor agency define physical impairment to include "any physiological disorder or condition ... affecting ... [the] genito-urinary" system. 45 C.F.R. § 84.3(j)(2)(i) (1990). The regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 84.3(j)(2)(ii). The Act and the regulations promulgated under it are to be interpreted broadly. *Arline*, 480 U.S. at 280 n. 5, 107 S.Ct. at 1127 n. 5 ("a broad definition, one not limited to so-called 'traditional handicaps,' is inherent in the statutory definition"); *Doe v. New York University*, 666 F.2d at 775 ("definition [of a person with handicaps] is not to be construed in a niggardly fashion"). We are inclined to view persons whose kidneys would cease to function without mechanical assistance, or whose kidneys do not function sufficiently to rid their bodies of waste matter without regular dialysis, as being substantially limited in their ability to care for themselves. *See Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority*, 718 F.2d 490, 493 (1st Cir.1983) (discussing obiter the "many handicapped people suffering from ... kidney disease").

Accordingly, we disagree with the district court's conclusion that Gilbert was not an "individual with handicaps" within the meaning of the Act.

B. *Whether Gilbert Was "Otherwise Qualified"*

■ In order to establish his prima facie case, however, Gilbert was required to show not only that he was a person with handicaps, but also, *inter alia*, that he was "otherwise qualified" for the position he was denied. The phrase "otherwise qualified" is not defined in the Act. It has been interpreted generally by the Supreme Court to refer to " 'one who is able to meet all of a program's requirements in spite of his handicap.' " *Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17 (quoting *Southeastern Community College v. Davis*, 442

U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)); *see Southeastern Community College v. Davis*, 442 U.S. at 406, 99 S.Ct. at 2367 (rejecting contention "that a person need not meet legitimate physical requirements in order to be 'otherwise qualified' "). Consistent with this interpretation, the regulations interpreting the Act generally use the term "qualified handicapped person," rather than "otherwise" qualified handicapped person, on the reasoning that "the omission of the word 'otherwise' is necessary in order to comport with the intent of the statute because, read literally, 'otherwise' qualified handicapped persons include persons who are qualified except for their handicap, rather than in spite of their handicap." 45 C.F.R. Part 84, App. A, at 362 (1990); *see also* 29 C.F.R. § 1613.702(f).

With respect to employment, the HHS regulations define the term "qualified handicapped person," in pertinent part, as "a handicapped person who, *with reasonable accommodation*, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(k) (emphasis added). In light of this definition, the Supreme Court in *Arline* recognized a two-part analysis of the Act's "otherwise qualified" requirement. First, after determining the essential functions of the job in question, the court must evaluate the medical evidence to determine whether the plaintiff can perform the job despite the handicap; if the answer is in the negative, "[t]he next step in the 'otherwise-qualified' inquiry is for the court to evaluate, in light of these medical findings, whether the employer could reasonably accommodate the employee under the established standards for that inquiry." *Arline*, 480 U.S. at 288, 107 S.Ct. at 1131; *see also Hall v. United States Postal Service*, 857 F.2d 1073, 1078 (6th Cir.1988) ("the 'otherwise qualified' inquiry requires a consideration not only of the handicapped applicant's ability to perform the job's essential function, but also whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions").

Since a plaintiff must show that she or he was "otherwise qualified" as part of the prima facie case, and since that term has been defined to include the concept of "reasonable accommodation," a plaintiff must, in order to make out a prima facie case, show that she or he can perform the essential functions of the job in spite of the handicap either (a) with no need for accommodation, or (b) with a reasonable accommodation. We do not view the plaintiff's burden with respect to the latter alternative as a heavy one. We would deem it sufficient on this issue for the plaintiff to present evidence as to her or his individual capabilities and suggestions for some reasonable assistance or job modification by the employer. This permits the court to make an individualized inquiry into whether the plaintiff is otherwise qualified for the job in question. It must be noted, however, that though "reasonable accommodation" may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, *see* 45 C.F.R. § 84.12(b), "reasonable accommodation" does not mean elimination of any of the job's essential functions. *See, e.g., Hall v. United States Postal Service*, 857 F.2d at 1078 ("an accommodation that eliminates an essential function of the job is not reasonable"); *Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir.1985) ("post office was not required to *accommodate* [plaintiff] by *eliminating* one of the essential functions of his job") (emphasis in original).

Once the plaintiff has made a prima facie case that she or he is otherwise qualified by showing the ability to perform the essential functions of the job with some reasonable accommodation, the burden shifts to the employer to show that no reasonable accommodation is possible. Indeed, in light of the goals of the Rehabilitation Act and the greater access of the employer to information regarding the feasibility of various possible job modifications, the employer is given the ultimate burden of proof on the issue of reasonable accommodation. *See* 45 C.F.R. § 84.12(a) (employer covered by Act "shall make reasonable accommodation ... unless [it] can demonstrate that the accommodation would impose an undue hardship on the operation of its program"); 29 C.F.R. § 1613.704(a) (same); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1423–24 (9th Cir.1985) (in action under § 501 of the Act and 29 C.F.R. § 1613.704(a), "burden of persuasion in proving inability to accommodate always remains on the employer"); *Prewitt v. United States Postal Service*, 662 F.2d 292, 308 (5th Cir. Unit A Nov. 1981) (same). We note that *Mantolete* and *Prewitt* appear to have placed even the initial burden of raising the accommodation issue on the employer, characterizing the plaintiff's burden as one of coming forward "to rebut" the showing of the employer that no reasonable accommodation is available. *See Mantolete v. Bolger*, 767 F.2d at 1423–24; *Prewitt v. United States Postal Service*, 662 F.2d at 308. These cases, however, do not address the fact that the definition of "otherwise qualified" includes reference to "reasonable accommodation." As indicated above, in our view the inclusion of "reasonable accommodation" in the definition of otherwise qualified makes either (a) the lack of any need for accommodation, or (b) the possibility of reasonable accommodation, a part of the plaintiff's prima facie case. No burden shifts to the defendant, of course, until the plaintiff has established a prima facie case.

In the present case, the district court found that the lifting and handling of 70-pound mail bags were essential *functions* of the Manual MD Clerk's job, a finding that has not been challenged on this appeal and that is not clearly erroneous, *see* Fed. R.Civ.P. 52(a). We thus turn to the matter of Gilbert's proof that he was qualified, despite his handicap, to perform those functions.

### 1. Gilbert's Ability To Perform Without Accommodation

Gilbert attempted to prove his claim by showing that he was fully qualified for the position of MD Clerk without any need for accommodation. His contention was that he was fully capable of handling 70-pound mail sacks. Accordingly, when the court

asked at trial whether Gilbert had ever made a written request that the Postal Service waive the physical requirements of the Manual MD Clerk position for him, his attorney responded:

MR. WATSON: Has Mr. Gilbert ever indicated that he could not meet the physical requirement that the job requests [*sic*]? No, the Postal Service is the only entity that has ever considered Mr. Gilbert unable to meet the requirements of the position.

(Trial Transcript, January 16, 1991, at 265.) Thus, the principal focus at trial was on the medical evidence as to whether Gilbert's condition was incompatible with the lifting and handling of 70–pound mail bags and the pushing of carts containing such mail bags. There was both documentary and testimonial evidence.

At the time Gilbert was rejected for the Manual MD Clerk position in 1982, his treating physician, Dr. Joseph T. McGinn, had written a letter stating that Gilbert was able to lift "up to twenty-five pounds." When Gilbert was rejected for the position in 1985, Dr. Morton J. Kleiner, another of his treating physicians, had written a letter stating that Gilbert "should be restricted from 'heavy lifting' and 'moderate carrying' and any physically traumatic activities." Though Gilbert thereafter submitted a new letter from Dr. McGinn that purported to "clarify" Dr. Kleiner's evaluation by contradicting it and opining that Gilbert could lift sufficient weights to perform the Manual MD Clerk's tasks, the court chose to credit Dr. Kleiner's evaluation and found that the "clarification" from Dr. McGinn was insufficient to require the Postal Service to reject the evaluation of Dr. Kleiner.

Five physicians testified at trial. They were Drs. McGinn and Kleiner; plaintiff's expert witness Dr. Andrew Peter Lundin III; Dr. Dan Acaru, a Postal Service physician who had examined Gilbert in 1985; and the Postal Service's expert witness Dr. Allan Gibofsky. Dr. McGinn reiterated his 1985 opinion that Gilbert could perform the lifting functions of the Manual MD Clerk job. Dr. Lundin expressed a similar opinion on the basis of 20–minute physical tests he had performed on Gilbert. The court found these evaluations not particularly persuasive. Dr. Kleiner, who viewed himself as Gilbert's primary treating physician because he saw Gilbert more frequently than did Dr. McGinn during Gilbert's hospitalizations, reiterated his earlier evaluation, testifying that it was not medically advisable for Gilbert to perform the Manual MD Clerk job. Dr. Gibofsky likewise testified that such employment was strongly contraindicated. He stated that repeated lifting would increase the risk of cyst rupture and that such a rupture could cause Gilbert hemorrhaging and infection. He testified that he regarded the medical risk of Gilbert's sustaining a rupture if employed as a Manual MD Clerk as "significant" and "over 50%."

The district court found the views of Drs. Kleiner and Gibofsky persuasive:

We find Dr. Kleiner's evaluation of the medical risks to plaintiff of engaging in the tasks assigned to a MDC-[Part-time, Flexible schedule] to be more persuasive than Dr. McGinn's, especially when viewed in the light of Dr. Gibofsky's testimony which we also accept and adopt.

Opinion at 5. It thus found that the medical evidence showed that Gilbert was not physically able to perform the essential Manual MD Clerk functions.

The weighing of the evidence, including the evaluation of expert testimony, is within the province of the district court as finder of fact, *see, e.g., Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 736 (2d Cir.1991); *Champion Spark Plug Co. v. Gyromat Corp.*, 603 F.2d 361, 367–68 (2d Cir.1979), *cert. denied*, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980). The court's findings are not to be disturbed unless they are clearly erroneous, Fed. R.Civ.P. 52(a), and "[w]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The evidence described above was ample to support the

court's finding that Gilbert was not able, without accommodation, to perform the essential functions of the Manual MD Clerk position. Accordingly, that finding may not be overturned.

We turn, therefore, to the question of whether Gilbert made a prima facie showing with respect to whether reasonable accommodation could permit him to perform those functions.

### 2. Reasonable Accommodation

Presumably because of his contention that he was fully able to perform the essential functions of the Manual MD Clerk position without accommodation, Gilbert minimized his efforts to show that a reasonable accommodation by the Postal Service could permit him to perform those functions despite his handicap. What little effort he made consisted solely of questions by his attorney to Postal Service witnesses as to whether the Postal Service could waive the heavy lifting and handling requirements in Gilbert's case, or whether it could assign other postal employees working with Gilbert to lift mail bags for him. The suggestion that the lifting and handling requirements might be waived for Gilbert was not a suggestion for reasonable accommodation since these tasks were essential functions of the job. The suggestion that co-workers might perform this part of Gilbert's job as Manual MD Clerk likewise sought the elimination, for Gilbert, of essential functions of the job. We note that the Postal Service witnesses' responses to the trial questions containing these suggestions did nothing to supply the gaps in Gilbert's prima facie case. The witnesses, who were, respectively, managers of operations and personnel, stated that having a coworker do the heavy lifting for Gilbert would not be a reasonable way to operate for several reasons, including (1) the fact that Gilbert would not know until he attempted to lift a sack how much it weighed, and the very attempt to handle a too-heavy sack could thus pose a danger to Gilbert and his coworkers; and (2) having two workers performing tasks that one worker is assigned would slow down and reduce the productivity of the operation.

Since, as discussed above, "reasonable accommodation" does not mean elimination of any of the job's essential functions, we conclude that the district court correctly ruled that Gilbert had failed to establish a prima facie case under the Act.

### CONCLUSION

We have considered all of Gilbert's arguments on this appeal and have found in them no basis for reversal. The judgment dismissing the complaint is affirmed.