Donna M. HARDY, Plaintiff,

v.

The VILLAGE OF PIERMONT, NEW YORK and Thomas Gaynor, personally and in his official capacity as Chief of Police of the Village of Piermont, New York, Defendants.

No. 95 Civ. 3430 (WCC).

United States District Court,
S.D. New York.

May 3, 1996.

605

Law Offices of Martin W. Schwartz, Nanuet, New York, for Plaintiff (Martin W. Schwartz, of counsel).

Kornfeld, Rew, Newman & Ellsworth, Suffern, New York, for Defendants (Thomas J. Newman, of counsel).

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff brings this action pursuant to 42 U.S.C. § 1983; the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.;* and the New York Civil Service Law, N.Y.Civ.Serv. §§ 72, 73. Plaintiff has moved for partial summary judgment, and defendants have cross-moved for summary judgment on all claims. For the reasons discussed below, plaintiff's motion is denied; defendants' motion is granted.

## BACKGROUND

The following facts are undisputed. Plaintiff Donna Hardy ("Hardy"), at times relevant to this action, held a tenured civil service position as a police officer with defendant Village of Piermont, New York (the "Village"). Defendant Thomas Gaynor ("Gaynor"), at times relevant to this action, was the Police Chief of the Village's police department. In November 1982, plaintiff was diagnosed with Crohn's disease, a gastrointestinal disorder. She was treated by a licensed physician who administered corticosteroid medication to alleviate inflammation. In November 1993, plaintiff became unable to perform her police duties because of a condition diagnosed by her treating physician as necrosis of the tibias in both legs. Plaintiff was informed that the corticosteroid medication had weakened her tibias to the degree that they could fracture or shatter under the stress of running or pro-

longed walking. Her physician advised her that the prognosis for recovery was uncertain and that she could not perform full police duties until the necrosis abated.

Primarily due to plaintiff's chronic illness, between March 1, 1982 and December 31, 1993, plaintiff utilized 490.5 sick days. Def. Gaynor's Cross–Motion for Summary Judgment, Ex. C ("Gaynor Brief"). During this same period, but prior to 1992, plaintiff was permitted to use an additional 113.5 "sick leave days" to which "she was not legally entitled." Gaynor Brief ¶ 3; *see id.*, Ex. D.

On January 7, 1994, plaintiff was informed by letter from defendant Gaynor that she had "no further time of any kind on the time book to be used as sick leave" and that the Village Board had decided not to approve additional sick leave at that time. Pl.'s Motion for Summary Judgment, Ex. B ("Pl. Brief"). Thus, plaintiff was placed on medical leave of absence without pay. *Id.* The letter informed plaintiff that the Village Board had granted her continued medical coverage which was subject to periodic review. *Id.* Gaynor also indicated in that letter that he would forward plaintiff's request for additional sick leave to the Village Board for consideration at the next meeting scheduled for January 11, 1994. Plaintiff alleges that on January 24, 1994, Gaynor summoned her to the police station and demanded that she turn in her official police shield, identification card, service weapon, personal off-duty weapon, and keys to the police station. Compl. ¶ 20. Plaintiff avers that "[h]e also informed plaintiff that she was no longer a member of the Piermont Village Police Department, and prepared a notice to that effect which was posted in police headquarters and also sent to the Rockland County Law Enforcement Communications Center." Pl. Brief, at 2.

On November 9, 1994, plaintiff's attorney wrote a letter to Gaynor advising him that his actions in placing plaintiff on unpaid medical leave violated state civil service laws, and demanding that Gaynor "accommodate her physical disability with a temporary light or limited duty assignment, as recommended by her treating physician." Pl. Brief, Ex. C. By letter dated November 23, 1994, the at-torney for defendant Village refused to restore plaintiff to active duty based upon the medical evidence submitted by plaintiff's own treating physicians: "In view of the medical evidence submitted to the Village of Piermont by Officer Hardy's own treating physicians, it would be totally improper and reckless for Chief Gaynor and the Village Board to restore her to duty at this time. Based upon the medical evidence, such action would jeopardize not only the public at large but Officer Hardy as well." Pl. Brief, Ex. D. Plaintiff's request for a limited or light duty assignment was refused on the ground that no such assignment was available within the department. *Id.* Plaintiff then submitted to the Village her physician's approval for her placement on "light duty as a police officer," meaning "no running at all or walking great distances," Pl. Brief, Ex. E, at 3, and again requested accommodation. Plaintiff avers that the Village again advised plaintiff's attorney during a February 10, 1995 telephone conversation that the Village would not accommodate plaintiff. Pl. Brief, at 3.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 10, 1995, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* As of the time of the filing of this action on May 11, 1995, the EEOC proceeding had not been resolved. The present action asserts claims under 42 U.S.C. § 1983 for violation of plaintiff's due process and equal protection rights under the Fifth and Fourteenth Amendments; the Federal Rehabilitation Act ("FRA"), 29 U.S.C. § 701 *et seq.;* and state law.

Plaintiff has moved for partial summary judgment on her claim that defendants deprived her of a property interest without due process of law (the § 1983 claim). Defendants have moved for summary judgment dismissing all claims on the grounds that (1) plaintiff was not terminated from employment and therefore was not deprived of any property interest (the § 1983 claim), (2) plaintiff is not entitled to be accommodated with a "light duty" position in the depart-

ment (the FRA claim), and (3) there is no genuine issue of material fact as to plaintiff's state law claims.

### DISCUSSION

The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions to file, together with affidavits, if any," that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the movant meets this initial burden, the party opposing the motion must then demonstrate that there exists a genuine dispute as to the material facts. *Id.* To show such a "genuine dispute," the opposing party must come forward with enough evidence to allow a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Defendants do not dispute that plaintiff had a property interest in her position as a police officer. Nor do defendants dispute that plaintiff was not afforded a pre-termination hearing. There is also no dispute that she was placed on unpaid medical leave after she "used up" her "sick days." Defendants maintain, however, that plaintiff was not terminated and therefore was not deprived of any property interest. Furthermore, defendants argue that placing plaintiff on medical leave without a hearing under the circumstances of this case does not constitute a taking of property without due process.

### I. Section 1983

The Fourteenth Amendment guarantees protect an individual's liberty and property from deprivation by a state government employer without due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Protected interests are not created by the Constitution; " 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Id.* (quoting *Board of Regents v.*

*Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Under New York law, a tenured municipal employee's interest in continued employment is a property interest protected by the Fourteenth Amendment. *See O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir.1994); *Berns v. Civil Service Commission*, 537 F.2d 714, 716 (2d Cir.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977). Plaintiff in the instant case is a tenured police officer in the Village of Piermont, and we therefore conclude that she has a protected property interest in continued employment.

In its simplest formulation, due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.), *cert. denied*, 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984). Determining precisely the process that is due, however, is more complicated than this simple statement might suggest. The level of procedural safeguards that must be afforded before the government may deprive an individual of a protected interest is determined by reference to (1) the private interest at stake, (2) the risk of error inherent in the use of one form of procedure over another, and (3) the interest of the government, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *See also Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493–94; *Hewitt v. Helms*, 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983).

Plaintiff's section 1983 claim is premised on the allegation that she was "constructively and actually removed" as a police officer by defendants, and thus deprived of a property interest without due process. Compl., at 10. Defendants argue that she was told only that she was being placed on unpaid medical leave. Because we find that no reasonable jury could conclude that plaintiff was terminated from employment, we hold as a matter of law that plaintiff was not deprived of a

property interest in her employment as a police officer of the Village. We further conclude that plaintiff was not entitled to a hearing prior to being placed on unpaid medical leave because plaintiff does not dispute, and never has disputed, that she is unable to perform the duties required of a police officer on active duty. A purported right to be accommodated by having a light duty position created for her is the sole basis of her contention that she has been deprived of a property right without due process. Because plaintiff has no legal right to have such a position created to accommodate her, we conclude that plaintiff was not entitled to a hearing prior to being placed on medical leave without accommodation.

**A. Termination.**

■ There is no evidence supporting plaintiff's basic premise that plaintiff was terminated from employment. Plaintiff alleges in the Complaint that, on January 24, 1994 (after plaintiff was placed on medical leave), Gaynor called plaintiff to the police station and required her to turn in her official police shield, identification car, service weapon, personal off-duty weapon and keys to the police station. Compl. ¶ 20. Plaintiff alleges that "Gaynor informed her to the effect that she was no longer a member of the Piermont Village Police Department" and "caused to be prepared a notice to the effect that the Plaintiff was no longer a member of the Piermont Village Police Department" and "had this notice posted in the Piermont Village Police Headquarters and sent a copy thereof to the Rockland County Law Enforcement Communications center." *Id.* Gaynor took possession of the aforementioned items only after plaintiff's status changed to medical leave. Gaynor stated in his affidavit that plaintiff retained her civil service status and is welcome to return to full duty as soon as she receives medical clearance. Gaynor Aff. ¶ 16. In response to a letter from plaintiff's attorney, defendants emphasized that plaintiff had not been terminated and that she could return to active duty when she was physically able: "Please be assured that it has always been the intention of Chief Gaynor and the Board of Trustees to restore Officer Hardy to full time duty when she is physically able." Pl. Brief, Ex.

D. Plaintiff does not dispute that she continues to receive full medical coverage and can return to active duty upon a showing that she is physically capable of resuming her duties. Nor does plaintiff dispute defendants' intention of placing her back on active duty when and if her condition permits. As plaintiff herself has represented, however, she is unable to resume active duty because of her condition. Plaintiff's recognition that she will be returned to active duty upon a showing that she no longer requires medical leave is incongruous with her assertion that she has been terminated or "constructively terminated" from employment.

Plaintiff alleges in the Complaint and in her affidavit that Gaynor effectively communicated to her that she was terminated. Compl. ¶ 20; Pl. Brief, Ex. A ¶ 6. On a motion for summary judgment, plaintiff may not rest solely on the pleadings in the Complaint. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Plaintiff must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Plaintiff has adduced no evidence in support of her conclusory allegation that she was terminated. Plaintiff does not dispute that she was placed on medical leave without pay, and was told that she could resume active duty whenever her own physician indicated that she was able. Furthermore, plaintiff does not dispute that she continues to receive full medical benefits during her medical leave. Finally, plaintiff does not dispute that she has exhausted all of her sick days, nor does she claim that she is entitled to additional sick days. For all these reasons, we find that no reasonable jury could conclude that plaintiff has been terminated.

**B. Medical Leave.**

■ Plaintiff argues that she has a property interest not only in employment, but active employment which includes remaining on paid status. Plaintiff argues that, under New York Civil Service Law, prior to placing a tenured civil service employee on Leave of Absence for Ordinary Disability, the employee must be provided with a pre-deprivation

medical examination, written notice, and a hearing. Pl. Brief, at 5 (citing N.Y.Civ.Serv. Law § 72 (McKinney Supp.1995)). Based on this provision, plaintiff argues that she was deprived of her property interest in maintaining active duty, without due process.

Plaintiff's admission that she is unfit for active duty is fatal to her claim. A close examination of plaintiff's submissions reveals that the only right that she is asserting is a right to be accommodated with a light duty position. Plaintiff cannot assert a deprivation of due process associated with her placement on medical leave because she does not dispute that she is unable to fulfill the duties of an active police officer, or that she has exhausted more than her allotted sick days. Plaintiff was placed on medical leave based on her representation and her doctor's subsequent confirmation that she is unable to maintain active duty.

The Court is aware of, and plaintiff has identified, no authority supporting the proposition that plaintiff has a cognizable property interest in maintaining her status as an active police officer when she herself admits that she is unable to perform the duties required of an active police officer. Defendants have made clear that when she is able to return to active duty, she may do so. Plaintiff readily admits that she is not able to assume active duty as a police officer of the Village. No pre-deprivation hearing was necessary in this particular case because plaintiff cannot allege that she was deprived of any property interest to which she was entitled. The gravamen of plaintiff's claim is that defendants should create a new job position to accommodate her, namely "limited duty."

■ Even assuming that plaintiff had a right to a hearing prior to being placed on medical leave, "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Even if plaintiff was deprived of an opportunity to challenge the change in her status prior to being placed on medical leave, she has had continuous opportunity from that moment to challenge being placed on medical leave. Plaintiff never availed herself of the opportunity to challenge her medical leave status or to be returned to active duty because she herself insisted that she was incapable of resuming active duty.

## C. Light Duty Position.

■ Defendants argue that the Village of Piermont Police Department has no light duty position available due to staffing and budgeting constraints. Gaynor, in his affidavit dated December 6, 1995, states that, to his knowledge, for more than twenty years there has been no such light duty position. Gaynor Aff. ¶¶ 10–11. "The Piermont Police Department consists of one Police Chief, one Sergeant, five male police officers and one female police officer. The Piermont Police Department is responsible for policing a population of approximately 2,200 people. The Police Department has an operating budget of approximately $652,000." Gaynor Aff. ¶ 3. Plaintiff has submitted no evidence to contradict defendants' contention that a light duty position does not exist and is not feasible given the budgetary constraints of the department. Plaintiff does not dispute that active duty involves many activities that require occasional running or walking long distances.[1] These are not unreasonable demands to be placed on a police officer employed by a small village as part of a small department with limited funds. We therefore conclude that defendants were not required to conduct a hearing to determine whether plaintiff was entitled to a non-existing light duty position before placing plaintiff on medical leave.

## II. Federal Rehabilitation Act

Under the FRA, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this

---

1. Police officers on active duty are required, for example, to patrol assigned areas on foot, make arrests for violations of laws and ordinances, book prisoners and escort them to jail and to court, direct traffic, check vehicles for overtime parking, maintain order at public gatherings, and conduct criminal investigations. *See* Reply Affidavit of Thomas Gaynor, Ex. A.

title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C.A. § 794 (West Supp.1996). Section 706(8) defines "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C.A. § 706(8)(B) (West Supp.1996).

■ Plaintiff clearly does not satisfy the criteria under this provision because, by her own admission, she is unable to perform the active duties of a Village police officer, and she therefore is not "otherwise qualified" for active duty. The phrase "otherwise qualified" is not defined in the FRA. It has been interpreted generally by the Supreme Court to refer to " 'one who is able to meet all of a program's requirements in spite of his handicap.' " *School Board of Nassau County, Fla. v. Arline,* 480 U.S. 273, 288 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)).[2] Consistent with this interpretation, the regulations interpreting the FRA generally use the term "qualified handicapped person," rather than "otherwise qualified handicapped person," on the reasoning that "the omission of the word 'otherwise' is necessary in order to comport with the intent of the statute because, read literally, 'otherwise' qualified handicapped persons include persons who are qualified except for their handicap, rather than in spite of their handicap." 45 C.F.R. Part 84, App. A., Subpt. A(5) (1995); *see also* 29 C.F.R. § 1613.702(f). The regulations define the term "qualified handicapped person," in pertinent part, as "a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(k).

■ There is no dispute that the duties of a police officer in the Village requires at times walking long distances or running, *see supra* n. 1, and plaintiff admits that her condition precludes her from doing either. Plaintiff offers no insight into how a reasonable accommodation on the part of defendants might enable plaintiff to perform these functions. Instead, plaintiff seeks the creation of a new "light duty" position that does not require any walking or running, and resists summary judgment on the ground that whether such an accommodation is reasonable is an issue of fact. What plaintiff seeks, however, goes beyond "reasonable assistance or job modification by the employer." *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991). "Reasonable accommodation" may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, *see* 45 C.F.R. § 84.12(b), but "reasonable accommodation" does not mean elimination of any of the job's essential functions. *Gilbert,* 949 F.2d at 642. *See also id.* at 644 (suggestion that the lifting and handling requirements of a Manual Mail Distribution Clerk could be waived for plaintiff was not a suggestion for reasonable accommodation because these tasks were essential functions of the job); *Hall v. United States Postal Service,* 857 F.2d 1073, 1078 (6th Cir.1988) ("[A]n accommodation that eliminates an essential function of the job is not reasonable."). In the instant case, plaintiff does not dispute that a Village police officer on active duty must at times walk long distances or run in carrying out various essential functions. Plaintiff does not suggest that any reasonable accommodation would enable plaintiff to carry out these essential functions. Plaintiff's lone assertion that a light duty position should be afforded as reasonable accommodation is unavailing in light of the undisputed fact that walking long distances and running are "essential functions of the job." *Gilbert,* 949 F.2d at 644; *Hall,* 857 F.2d at 1078. *See also Cook v. United States Dept. of Labor,* 688 F.2d 669, 670 (9th Cir.1982) (per curiam) (Plaintiff was not barred because of his physical handicap in violation of FRA where both plaintiff and his doctor informed plaintiff's

---

2. In the 1996 amendments, the FRA substitutes the term "handicap" with the term "disability."

employer that plaintiff suffered from angina and plaintiff conceded that if he had angina, he would have been unable to adequately perform his job as a jailer.), *cert. denied,* 464 U.S. 832, 104 S.Ct. 112, 78 L.Ed.2d 113 (1983).

Plaintiff has failed to adduce any evidence supporting an allegation that she is a "qualified individual with a disability" who can perform the essential functions of the job with reasonable accommodation. In fact, it is based on plaintiff's representations and her treating physician's subsequent confirmation that defendants were compelled to conclude that she could not fulfill her active duties as a police officer. Because plaintiff has come forward with no evidence upon which a fact finder could rely, her opposition to summary judgment is unavailing.

### III. State Law Claims

Because we grant defendants summary judgment dismissing all federal claims, we decline to exercise jurisdiction over the pendent state law claims. *See* 28 U.S.C. § 1367(c)(3); *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992).

### CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is denied; defendants' motion for summary judgment is (1) granted with prejudice with respect to the claims brought under section 1983 (first and second causes of action) and the FRA (seventh cause of action), and (2) granted without prejudice with respect to the claims brought under New York state law (third, fourth, fifth, and sixth causes of action).

SO ORDERED.