**Pamela Joan JENKINS, Plaintiff,**

v.

**NORTHWOOD REHABILITATION AND EXTENDED CARE FACILITY; and Highgate L.T.C. Management, L.C.C., f/k/a/ Highgate Manor of Courtland, Inc. Defendants.**

No. 00–CV–1598.

United States District Court, N.D. New York.

May 28, 2003.

LoPinto, Schlather, Solomon & Salk, Diane L. Campbell, Of Counsel, Ithaca, NY, for Plaintiff.

Lemery, MacKrell Greisler, LLC, Saratoga Springs, NY, Robert A. Lippman, Of Counsel, for Defendants.

### AMENDED MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

Plaintiff sues her prospective employer for violation of the Americans with Disability Act ("ADA"), alleging failure to accommodate her back problems. Her back troubles resulted from a fall in 1987 and a workplace accident in 1989. The injury compelled her to adjust her lifestyle and daily activities to avoid aggravating the condition. The injury limited her capacity to lift and carry and do certain strenuous housework. It also affected her abilities to dress herself, stand for protracted periods, make lengthy automobile trips as a driver or rider, walk, and take part in recreational programs. When her back is causing her discomfort, she will delay carrying out tasks, and, at times, has had to hire work done that she could previously complete.

Throughout the relevant time period of this case, however, plaintiff was sufficiently physically fit to continue to work as a physical therapist from 1991, until the birth of her daughter in 1996. During this period she worked with individuals who had received treatment and been discharged from a subacute rehabilitation program. She did not assist any patients who were totally debilitated and required acute physical therapy care. Plaintiff did not have her back treated because she adjusted her lifestyle to accommodate her disability, and as a physical therapist, she has self-treated, taking treatments for her back including ultrasound, heat and electrical stimulation from equipment available to her through her work.

Plaintiff subsequently returned to work, and on January 23, 1997, she held a position at Olsten Kimberly Quality Care in Auburn, NY, when she was interviewed for employment at Highgate Manor ("Highgate") of Staff Physical Therapist in Highgate's subacute care program. The interview was conducted by Anthony C. Zgardzinski, Jr., Highgate's Director of Physical Therapy. Highgate's written job

description, produced before advertising the availability of the position, contained the job's physical requirements that the prospective employee can perform lifting and carrying fifty to one hundred pounds. This lifting capacity was needed to make maximum assist lifts without the assistance of another person or mechanical device. Maximum assist lift procedures are utilized by physical therapists to evaluate a patient's abilities, encourage and assist patient rehabilitation and transfer patients to wheelchairs or physical therapy equipment. Plaintiff signed a copy of the job description.

She received an employment offer from Highgate, and was instructed to report for an employment physical the next day, and given a start work date of January 27, 1997. On January 24, 1997, plaintiff completed a health questionnaire in which she made known that she had been employed in her profession since 1983, suffered from a back condition, and could not perform maximum assist lifts. Plaintiff then passed the physical examination that was done by Dr. Eckel, a staff physician at Highgate.

Highgate staff members considered the ability to perform maximum lifts and transfers to be an essential part of a physical therapist's duties. When they later examined plaintiff's health questionnaire and found that she was unable to undertake this duty, they discussed what steps might be taken to accommodate plaintiff in a full lift and transfer situation. Consideration was given to possibly assigning an aide to work with her but, concluded that additional staff might not be available to assist plaintiff each time she would require it, thereby creating possible dangerous situations for Highgate's patients. Additionally, a physical therapist frequently needs to physically lift or assist in lifting a patient to ascertain that patient's condition

and therapy needs. Another factor is that a physical therapist in an acute care situation must be able to help and support the full weight of an ambulatory patient and, if necessary, interpose her body if the patient starts to fall.

The use of a mechanical lift was also deliberated, but rejected because of the restricted availability of lifts to cover the 30% to 40% of patients at Highgate that needed maximum assistance, using a lift would also rule out the personal hands-on analyses indispensable to a physical therapist's work. The hiring of another maximum assistance therapist to work on plaintiff's shift was deemed impractical because if the new therapist was not available due to scheduling, vacation or illness, there would be no fully qualified therapist at the facility during plaintiff's work periods.

After reviewing all of these possible accommodations for plaintiff, the staff members concluded that they could not hire the plaintiff.

Plaintiff asserts that the physician who conducted her physical examination, Dr. Eckel, was well acquainted with the physical requirements of a physical therapist, that he was made aware of her back condition, questioned her about her lifting capacity, and found that she would do fine at Highgate. Plaintiff further asserts that maximum lifts were rare and were needed for only about 6% to 8% of Highgate's patients.

Later that day, plaintiff was contacted by Anthony Zgarzinsky and advised that Highgate did not want to employ a person with any limitations. She replied that she was trained in lifting techniques, had successfully self-medicated her back condition by herself for seven years, and that her disability had readily been accommodated by former employers by the use of the mechanical lifting device or requesting assistance from co-workers on the infrequent

occasions when a maximum assist lift was called for. She was advised that such accommodations would not be forthcoming at Highgate, and her offer of employment was rescinded. She then sought employment in appointments with duties that corresponded with those of the Highgate position, but did not accept any because they had lower salaries, no benefits and long commutes.

In February 1997, plaintiff filed an ADA employment claim against the defendants with the Equal Employment Opportunity Commission ("EEOC"). Her claim was automatically filed with the New York State Human Rights Commission. On March 27, 2002, the EEOC issued a probable cause determination on plaintiff's discrimination charge. On August 24, 2002, the EEOC notified plaintiff that it would not institute legal proceedings against the Highgate defendants and issued plaintiff a Notice of Right to Sue. Plaintiff then timely commenced this action.

The amended complaint in this action was filed on February 12, 2002. It alleges discrimination in employment based on disability in violation of the ADA, 42 U.S.C. § 1201, *et seq.,* the 1991 Civil Rights Act, 42 U.S.C. § 1981(a), and the New York State Human Rights Law ("NYSHRL") New York State Executive Law § 90, *et seq.* Plaintiff seeks equitable relief and monetary damages.

Currently before the court is defendants' motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to the motion.

## DISCUSSION

The portion of the ADA applicable to the case at bar states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employees compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When considering a summary judgment motion in a discriminatory discharge brought under the ADA, the court applies the burden shifting test found in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The test is composed of three parts—(1) plaintiff must demonstrate a *prima facie* of discrimination; (2) if the *prima facie* case is established, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions and, (3) if the defendant does so, the presumption created by plaintiff's *prima facie* case is removed, and the plaintiff then must prove the presence of intentional discrimination by showing by a preponderance of the evidence that the defendant's proffered reasons are only a pretext for the real motivation of discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993).

 In order to create a *prima facie* case of discriminatory hiring under the ADA, a plaintiff must initially show that his employer is subject to the ADA, (2) he/she suffers from a disability within the meaning of the ADA, (3) he/she could perform the essential functions of his/her job with or without accommodation, and (4) he/she was denied employment because of his/her disability. *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 149–150 (2d Cir.1998). To ascertain if a plaintiff is disabled for the purposes of ADA, three steps are taken, (1) decide if the plaintiff is afflicted with a physical or mental impairment, (2) name the life activ-

ity upon which plaintiff relies and confirm whether it is a major life activity under the ADA and, (3) determine if plaintiff's impairment substantially limits the major life activity relied on by plaintiff. *Bragdon v. Abbott*, 524 U.S. 624, 632–39, 118 S.Ct. 2196, 2202–05, 141 L.Ed.2d 540 (1998). Major life activities are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(1)(ADA). The listed activities are "examples only," and other major life activities include, but are not limited to, standing, sitting, lifting or reaching. ADA Handbook I–25 (1992); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867 (2d Cir.1998).

While the record contains no specific medical substantiated diagnosis of plaintiff's asserted lifting impairment, the court will assume that it is evidenced by her request for accommodation if a patient requires a maximum lift. The question, then, is whether the impairment constitutes a disability under one of the statutory definitions listed above.

Although practically any impairment may, of course, in some way affect a major life activity, the ADA certainly does not consider every impaired person to be disabled. Consequently, in analyzing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities, from those that substantially restrict major life activities. Congress did not mean to extend the protection of the ADA to every physical impairment that precluded the performance of some particularly difficult manual task. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002); *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1454 (7th Cir.1995)("not every impairment that af-

fects an individual's major life activities is a substantially limiting impairment").

■ Assuming that plaintiff is able to establish that she has a disability as defined by the ADA, she cannot establish a *prima facie* case of discrimination under the ADA because she cannot show that she is a "qualified individual." In determining if a plaintiff is a "qualified individual" with a disability, the court must first decide whether she can perform the essential functions of the job. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). "Reasonable accommodation" does not mean elimination of the job's essential functions. *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir.1991). If it is concluded that the plaintiff cannot perform the essential functions of the job, it then must be determined whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. If no reasonable accommodation would enable plaintiff to carry out the essential functions of the job, then she is not a "qualified individual" with a disability and is not subject to the protection afforded by the ADA.

"Reasonable accommodation does not mean elimination of an essential function of the job's essential functions." *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir.1991). Nothing in the ADA indicates that in enacting this legislation, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply to show that disabled persons have the same opportunities available to them as are available to non-disabled persons. The defendants did not have an affirmative duty to provide plaintiff with a position for which she was qualified; the Group only had an obligation to treat him in the same manner that it treated other similarly qualified personnel. *School Board v. Arline*, 480 U.S. 273, 289, n. 1 107

S.Ct. 1123, 1131 n. 9, 94 L.Ed.2d 307 (1987); *Bates v. Long Island Railroad Company,* 997 F.2d 1028, 1035–36 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993).

In the instant case, defendants had developed a written job description for the position plaintiff applied for that stated the physical requirements of the job of physical therapist. Plaintiff signed and acknowledged a copy of these requirements. Among other things, the applicant had to be physically capable of lifting and carrying fifty to one hundred pounds. This physical ability was an essential function of the physical therapists' work at Highgate when plaintiff applied because to properly evaluate patients and carry out their other responsibilities, they had to be capable of performing maximum assistance lifts and transfer of patients. It is clear that these tasks were performed by the physical therapists at Highgate and were essential functions of their work there.

Since plaintiff has admitted that she was unable to perform these essential functions of the job, the court now turns to the question of whether any reasonable accommodation by the employer would enable plaintiff to perform those essential functions. *Chandler,* 2 F.3d at 1393–94. However, the ADA does not require an employer to eliminate or relocate essential functions of a position in order to provide accommodation. Such redefinition exceeds reasonable accommodation. *Bradley v. University of Texas M.D. Anderson Cancer Center,* 3 F.3d 922, 925 (5th Cir.), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994).

Plaintiff contends that she could be accommodated if she were permitted to avoid heavy lifting, request assistance, or allowed to use a mechanical medical lifting device when heavy lifting was needed. Such an accommodation would eliminate or redefine an essential function of the job,

which the ADA does not require. Additionally, this accommodation could pose a risk to the welfare of Highgate's patients in the event of an emergency situation which would require swift action. 29 C.F.R. § 1630.2(r).

The court determines that plaintiff cannot perform the physical duties of patient care which are an essential function for the physical therapist position she applied for at the Highwater facility. There is no accommodation that Highgate could have made that would enable her to perform all of the duties.

The fact that plaintiff's passed Highgate's physical examination did not mean that her job was then assured. The hiring personnel at Highgate acted properly in making the withdrawal when they became aware of plaintiff's impairment after her examination. The EEOC has stated that "[m]edical information may be given and used by—appropriate decision makers involved in the hiring process so they can make decisions consistent with the ADA." *O'Neal v. City of New Albany,* 293 F.3d 998, 1009 (7th Cir.2002).

Plaintiff also argues that Highgate did not comply with the ADA by not engaging in an interactive process with her to assess her limitations and accommodations she felt were necessary to perform the applied for job. It is clear from plaintiff's deposition testimony that she talked with Tony Zgardinski, Northwood's Director of Physical Therapy Services, about possible accommodations. They talked about the use of mechanical medical lifting devices, assigning staff to assist her, having her only treat non-acute care patients and adjusting her case load.

Thereafter, Zgardinski met with the relative administrative personnel to consider the several accommodations he had discussed with plaintiff. After thoroughly examining these possible accommodations, each one was unreasonable, burdensome,

ineffective or unsafe to both plaintiff and Northwood's patients. Plaintiff has presented no material evidence to the contrary.

The court declines to exercise pendant jurisdiction over plaintiff's state law claims under the New York Human Rights Law and the New York state common law claim of prima facie tort. When the federal law claims have been dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline to exercise pendant jurisdiction by dismissing the case without prejudice. This judgment will not foreclose plaintiff's pursuit of his state law claims in state court. *Buckley v. Consolidated Edison Company of New York*, 155 F.3d 150, 157 (2d Cir.1998).

Accordingly, defendant's motion for summary judgment is **GRANTED** with prejudice and the complaint is dismissed with prejudice as to plaintiff's federal law claims, plaintiff's state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**